STATE OF MICHIGAN

 COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN, UNPUBLISHED
 November 25, 2014
 Plaintiff-Appellee,

v No. 317181
 Montcalm Circuit Court
MAURICE EUGENE HILL, LC No. 2012-016645-FH

 Defendant-Appellant.

Before: BOONSTRA, P.J., and DONOFRIO and GLEICHER, JJ.

PER CURIAM.

 Defendant appeals by right his convictions and sentences for two counts of resisting,
assaulting, or obstructing a police officer, MCL 750.81d, and one count of malicious destruction
of police property, MCL 750.377b. Defendant was originally sentenced as a fourth habitual
offender, MCL 769.12, to concurrent terms of 4 to 15 years for each count of resisting,
assaulting, or obstructing a police officer, and 4 to 15 years for the malicious destruction of
police property conviction, all to be served consecutively to the sentence for which defendant
was on parole at the time of the offense. Defendant was also ordered to pay $2,213.54 in
restitution, as well as various costs and fees. After filing his appeal by right, defendant also filed
a motion in this Court to remand to the trial court for a restitution hearing and resentencing based
on alleged errors in the scoring of offense variables (OVs) 3, 9, and 19. This Court granted
defendant’s motion to remand.1 After the restitution hearing, the trial court found that the
original amount of restitution ordered was supported by the record and was proper. At
resentencing, the prosecution agreed that OV 3, MCL 777.33 (physical injury to victim), had
been improperly scored, and the trial court rescored OV 3 at 0 points. In addition, over the
prosecution’s objection, the trial court found that OV 9, MCL 777.39 (number of victims), had
been improperly scored and rescored OV 9 at 0 points, leaving only OV 13 and OV 19 as scored
variables. The adjustments in scoring to OV 3 and OV 9 resulted in a change to defendant’s
recommended minimum sentence range under the sentencing guidelines, and the trial court
resentenced defendant to 46 to 180 months’ incarceration for each of the resisting, assaulting, or
obstructing a police officer convictions and 46 to 180 months’ incarceration for the malicious

1
 People v Hill, unpublished order of the Court of Appeals, entered January 24, 2014 (Docket
No. 317181).

 -1-
destruction of property conviction. Following the restitution hearing, the trial court again
ordered $2,213.54 in restitution. Defendant then filed a supplemental brief with this Court, again
challenging the amount of restitution ordered.2 We affirm.

 I. PERTINENT FACTS AND PROCEDURAL HISTORY

 On September 30, 2012, Officer Casey Huber of the Greenville Police Department was
dispatched to a bar; when he arrived, several people identified defendant as having been involved
in an altercation. As Huber approached defendant, he ran away. Huber followed defendant, and
defendant ran into a stairway leading to apartments above several businesses. Huber requested
backup from Officer Mark Cole of the Greenville Police Department. Huber and Cole ascended
the stairway and searched the hallway in the apartment building. No lights were on in the
building, and Huber continually yelled, “Police! Police,” as the officers searched the hallway.
The officers noticed a broken lock on a closet door; when Cole attempted to open the door, he
encountered “resistance” and concluded that defendant was in the closet. Cole testified that he
continued to pull on the door, and the door “flew open”; defendant emerged from the closet with
his arms “spread as wide as he could” and “hit” and “tackled” Cole. Cole tried to grab
defendant, but defendant kept “driving forward” and started running down the hallway. Huber
deployed his taser against defendant, and defendant fell to the ground. Defendant was
subsequently arrested and handcuffed, but he refused to walk to a patrol car, and the officers had
to carry him. Defendant also refused to get into the patrol car; he screamed obscenities at the
officers and kicked the car and Cole, forcing Cole to “dry stun” defendant with his taser to get
defendant inside the car. Once defendant was inside the patrol car, he continued to scream and
violently kick the car. After the officers brought defendant to jail, Huber observed that the frame
of the rear, passenger-side door of the patrol car was bent.

 II. UNLAWFUL SEIZURE

 Defendant’s first argument on appeal is that at the time he was in the closet in the
apartment building as the officers approached it, he was unlawfully seized for purposes of the
Fourth Amendment. Defendant did not raise this issue at trial; his unpreserved claim is therefore
reviewed for plain error affecting his substantial rights. People v Carines, 460 Mich 750, 764;
597 NW2d 130 (1999). Defendant must show the existence of a plain (clear or obvious) error

2
 Defendant’s original claim of appeal contained several challenges that are now moot by virtue
of the proceedings on remand. This includes defendant’s argument that he was denied due
process of law by the trial court’s failure to hold a restitution hearing, and defendant’s challenges
to the scoring of OV 3 and 9. We therefore decline to address these arguments as moot. See
People v Cathey, 261 Mich App 506, 510; 681 NW2d 661 (2004) (“An issue is moot when an
event occurs that renders it impossible for the reviewing court to fashion a remedy to the
controversy.”). As discussed below, it is unclear to this Court whether defendant intended to
pursue a challenge to the scoring of OV 19 before this Court; we conclude, however, that even if
defendant so intended, he has failed to preserve and present the issue for appellate review.

 -2-
and must show “prejudice, i.e., that the error affected the outcome of the lower court
proceedings.” Id. at 763-764. Even when there is a showing of plain error affecting substantial
rights, reversal is warranted only when the plain error “resulted in the conviction of an actually
innocent defendant or when an error seriously affect[ed] the fairness, integrity or public
reputation of judicial proceedings’ independent of the defendant’s innocence.” Id. (citations and
quotation marks omitted).

 Both the United States and Michigan Constitutions prohibit unreasonable searches and
seizures. US Const, Am IV; Const 1963, art 1, § 11. “The Michigan constitutional provision is
generally construed to afford the same protections as the Fourth Amendment.” People v
Antwine, 293 Mich App 192, 194-195; 809 NW2d 439 (2011). “In order for any police
procedure to have constitutional search and seizure implications, a search or seizure must have
taken place.” People v Frohriep, 247 Mich App 692, 699; 637 NW2d 562 (2001). “The
safeguards of the Constitution, with respect to police/citizen contact, will vest only after the
citizen has been seized.” Id. (citation omitted). Not all interactions between police officers and
citizens involve the seizure of a person, and a seizure only occurs for purposes of the Fourth
Amendment if an “officer, by means of physical force or show of authority, has in some way
restrained the liberty of a citizen.” Id. at 700. A defendant is generally not “seized” until a
police officer “physically hinder[s] defendant’s departure and instruct[s] him to stay in the
officer’s presence.” People v Jenkins, 472 Mich 26, 34; 691 NW2d 759 (2005). Further, in
People v Lewis, 199 Mich App 556, 559-560; 502 NW2d 363 (1993), this Court held that a
defendant who was fleeing the police was not seized until an officer “actually laid his hand on
him” and further found that even if the officer’s pursuit of the defendant “amounted to a show of
authority,” because the defendant did not submit to that show of authority, a seizure did not
occur until the officer physically restrained the defendant.

 In this case, at the time defendant was hiding in the closet in the apartment building, he
was fleeing from Huber and Cole, and the officers had not, by means of physical force or show
of authority, in any way restrained defendant’s liberty. Therefore, defendant was not “seized”
for purposes of the Fourth Amendment. Jenkins, 472 Mich at 34; Frohriep, 247 Mich App at
700; Lewis, 199 Mich App at 560. Further, when defendant emerged from the closet, tackled
Cole, and continued to run down the hallway and evade the officers, the officers lawfully
arrested defendant for assaulting, obstructing, and opposing the officers, which is a felony.
MCL 750.81d. MCL 764.15 allows an officer to arrest a person without a warrant if a felony is
committed in the officer’s presence. Because defendant was not seized for purposes of the
Fourth Amendment until after he had committed the offense of assaulting, obstructing, and
opposing an officer, and his arrest was lawful, there is no merit to defendant’s argument that he
had a right to resist an unlawful seizure or arrest.

 Defendant’s reliance on People v Moreno, 491 Mich 38, 58; 814 NW2d 624 (2012), in
which our Supreme Court held that MCL 750.81d did not abrogate the common-law right to
resist unlawful arrests or other unlawful invasions of private rights, is misplaced. The Court
specifically found that “the right to resist unlawful arrests, and other unlawful invasions of
private rights, is well established in our state’s common law.” Id. at 46-47 (emphasis added).
Moreno was clear that an individual does not have the right to resist lawful actions by police
officers. When defendant exited the closet and immediately committed the felony of resisting
and obstructing, MCL 750.81d, as discussed, supra, defendant was lawfully arrested. Because

 -3-
defendant’s arrest was lawful, he did not have a right to resist this arrest. Id. In sum, defendant
has not shown, and the record does not support a finding of, plain error with regard to the
officers’ actions when they approached the closet or in the subsequent arrest of defendant.
Carines, 460 Mich at 764.

 IV. RESTITUTION AMOUNT

 Next, defendant challenges the amount of restitution ordered. A trial court’s restitution
order is reviewed for an abuse of discretion. People v Fawaz, 299 Mich App 55, 64; 829 NW2d
259 (2012). We review a trial court’s findings of fact for clear error, and review the trial court’s
interpretation of a statute de novo. Id.

 The Crime Victim’s Rights Act (CVRA), MCL 780.751 et seq., governs restitution to
crime victims. Fawaz, 299 Mich App at 64. Pursuant to MCL 780.766(2), restitution is
mandatory, not discretionary. Further, when the Legislature enacted the CVRA, it “plainly
intended to shift the burden of losses arising from criminal conduct - as much as practicable -
from crime victims to the perpetrators of the crimes; thus, the CVRA is remedial in character and
should be liberally construed to effectuate its intent.” Fawaz, 299 Mich App at 65. “The amount
of restitution to be paid by a defendant must be based on the actual loss suffered by the victim,”
and “the prosecution bears the burden of establishing the proper amount of restitution by a
preponderance of the evidence.” Id. (citations omitted). When determining the proper amount
of restitution, a trial court may consider information contained in the Presentence Investigation
Report (PSIR) that pertains to the amount of loss sustained by any victim because of the offense.
MCL 780.767.

 Defendant first challenges the trial court’s determination that $2,146.34 in restitution was
owed for payments related to Cole’s injuries.3 The record establishes that Cole’s altercation with
defendant resulted in an abrasion to, and bruising and swelling of, his right arm and elbow area,
which increasingly worsened and resulted in surgery on his right arm. Because Cole suffered
direct physical harm as the result of the commission of defendant’s crimes, he was “a victim” of
defendant’s crimes for purposes of restitution under the CVRA. MCL 780.766. Cole testified
that he was required to miss work for the surgery on his right arm and the subsequent recovery
period, and that the Michigan Municipal League Worker’s Compensation Fund reimbursed him
$1,496.26 for this time away from work. This testimony was corroborated by information in,
and attached to, the PSIR. In addition, information attached to the PSIR documented more than
$650 in medical expenses incurred by Cole related to injuries sustained in the altercation with
defendant. Pursuant to the CVRA, the trial court was required to enter an order of restitution
under which defendant must pay the reasonably determined cost of Cole’s medical and related
professional services actually incurred and reasonably expected to be incurred as a result of the
crimes, as well as the income loss suffered by Cole as a result of the crimes. MCL 780.766(4).
Additionally, the court was required to “order restitution to . . . any individuals, partnerships,
corporations, associations, governmental entities, or other legal entities that have compensated

3
 The restitution was requested by Michael Puzack, Director of Greenville Public Safety, on
behalf of the Michigan Municipal League Worker’s Compensation Fund.

 -4-
the victim for a loss incurred by the victim to the extent of the compensation paid for that loss.”
MCL 780.766(8). Based on Cole’s testimony and the information in the PSIR, the trial court did
not err when it found that defendant owed $2,146.34 in restitution for expenses related to Cole’s
injuries.

 Second, defendant challenges the trial court’s order that $67.20 in restitution was owed to
the City of Greenville for damage to the patrol car. Huber testified that he did not observe any
damage to the car before September 30, 2012, but that after the officers brought defendant to jail,
the frame of the rear door that defendant kicked was bent. Cole also testified that he observed
this damage to the door of the patrol car, and both officers testified that the patrol car was
repaired at a local body shop. An employee of the body shop testified that he and his supervisor
repaired the patrol car, and this testimony was corroborated by information in, and attached to,
the PSIR. Therefore, the record establishes that the City of Greenville was a victim of
defendant’s crimes for purposes of restitution under the CVRA because it is a governmental
entity that suffered financial harm as the result of the commission of defendant’s crimes.
MCL 780.766(1). Pursuant to the CVRA, the trial court was required to enter an order of
restitution under which defendant must pay an amount equal to the replacement value of the
damaged property. MCL 780.766(3). Based on the officers’ testimony, the testimony of the
employee of the body shop, and the information in the PSIR, the documented replacement value
of the door of the patrol car that was damaged by defendant was $67.20. Therefore, the trial
court did err when it found that defendant owed $67.20 in restitution to the City of Greenville for
damage to Officer Huber’s patrol car despite other information to the contrary.

 V. OV 19

 Defendant’s original appellate brief contained the following statement concerning offense
variables:

 There were no weapons used; therefore Offense Variables 1 and 2 are not relevant
 and must be assessed at 0 points. Malicious Destruction Of Police Property is a
 property crime and the alleged victim is the police department; therefore, there
 was no injury and Offense Variable[s] 3 and 4 cannot be assessed. Also, there
 were not 2 or more victims and there was no exploitation; therefore, Offense
 Variables 9 and 10 cannot be assessed. Also, Offense Variables 12, 14, and 20
 are inapplicable. And, since the amount of damage for the Malicious Destruction
 Of Police Property is only $67.20, Offense Variable 16 should be assessed at 0
 points. . .

 This leaves only Offense Variable 13 and Offense Variable 19 being remotely
 relevant. The scoring of these variables would not amount to 45 points. [Citation
 omitted.]

 -5-
 In defendant’s motion to remand, he challenged only the scoring of OVs 3, 9, and 19.4
On remand, the scoring of OVs 3 and 9 was adjusted to zero points each, as defendant requested.
However, during the proceedings on remand, defendant did not raise any challenge to OV 19,
and the scoring of OV 19 was not addressed by the trial court.

 It is unclear to this Court whether defendant ever intended to challenge the trial court’s
scoring of OV 19. Defendant did originally preserve a challenge to this variable by raising the
issue in a motion to remand. People v Kimble, 470 Mich 305, 310-311; 684 NW2d 669 (2004).
However, his failure to raise a challenge before the trial court on remand, as he was specifically
permitted to do by this Court’s order, could indicate defendant’s acceptance of the score. In any
event, his failure to raise a challenge to OV 19 before the trial court when presented with the
opportunity to do so could preclude our review of this issue. See People v Dupree, 486 Mich
693, 703; 788 NW2d 399 (2010) (“In accordance with the general rule of issue preservation,
issues that are not properly raised before a trial court cannot be raised on appeal absent
compelling or extraordinary circumstances.”) (quotation marks and citation omitted); see also
People v Szalma, 487 Mich 708, 726; 790 NW2d 662 (2010) (“[A] party may not harbor error at
trial and then use that error as an appellate parachute.”). Finally, assuming defendant intended to
challenge the scoring of OV 19, he has not provided this Court with factual and legal support for
his argument and has thus abandoned it. People v Kevorkian, 248 Mich App 373, 389; 639
NW2d 291 (2001), lv den 465 Mich 973 (2002), cert den 537 US 881; 123 S Ct 90; 154 L Ed 2d
137 (2002).

 Affirmed.

 /s/ Mark T. Boonstra
 /s/ Pat M. Donofrio
 /s/ Elizabeth L. Gleicher

4
 Certain other OVs referenced in defendant’s initial appellate brief were not in fact scored.

 -6-