*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TYLER JAMEIL PAGEL,

        Defendant-Appellant.

UNPUBLISHED
June 15, 2023

No. 361165
Genesee Circuit Court
LC No. 17-042369-FC

Before: RIORDAN, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of first-degree home invasion, MCL 750.110a(2), conspiracy to commit first-degree home invasion, MCL 750.157a; MCL 750.110a(2), and armed robbery, MCL 750.529.[1] The trial court originally sentenced defendant to prison terms of 140 to 240 months for his convictions of first-degree home invasion and conspiracy to commit first-degree home invasion, and 300 to 700 months for his armed robbery conviction, all to be served consecutively. In a prior appeal, this Court affirmed defendant's convictions, but remanded "for further sentencing proceedings." *People v Alexander et al.*, unpublished per curiam opinion of the Court of Appeals, issued March 11, 2021 (Docket Nos. 349053, 349055, 349056 & 349158). On remand, the trial court again sentenced defendant to prison terms of 140 to 240 months for his convictions of first-degree home invasion and conspiracy to commit first-degree home invasion, and 300 to 700 months for his conviction of armed robbery. But the sentences for conspiracy to commit first-degree home invasion and armed robbery were to be served concurrently with each other and consecutively to defendant's sentence for first-degree

---

[1] The jury acquitted defendant of first-degree felony murder, assault with intent to rob while armed, and five counts of felony-firearm.

home invasion.[2]  We vacate defendant's judgment of sentence and remand to the trial court for resentencing consistent with this opinion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In July 2017, defendant participated, along with codefendants Jordan Alexander, Zicary Carpenter, and Joshua Eubanks, in a home invasion that led to the shooting death of a homeowner, Albert Ballard.  The relevant background facts are set forth in this Court's prior opinion in *Alexander*, unpub op at 3-4:

> Defendants' convictions arise from a home invasion at the home of Albert and Janice Ballard in Flint during the early morning hours of July 11, 2017.  Janice was physically assaulted and Albert was shot and killed during the offense.  The prosecutor's theory at trial was that all four defendants, and a fifth person, Dreshavon Jones, planned and participated in the home invasion.  Jones pleaded guilty to several charges pursuant to a plea agreement that required him to testify truthfully at defendants' trial.  According to Jones, he and the other defendants committed a home invasion at a different home, belonging to Austin Papkey, earlier in the night and then targeted the Ballard home.  Evidence of the Papkey home invasion was introduced at defendants' trial.  Jones testified that when the group entered the Ballard home, Carpenter gave him a .40-caliber firearm, which Carpenter said was not loaded, and Alexander was holding a nine-millimeter firearm and wearing a red hooded sweatshirt.

> Janice Ballard testified that she awoke to find an intruder wearing a red hooded sweatshirt inside her bedroom.  The intruder demanded to know where she kept her money.  When Janice did not immediately respond, the intruder hit her. Albert was downstairs, where he had apparently fallen asleep while watching television.  According to Janice, Albert owned a .45-caliber firearm that he kept in one of the kitchen cupboards.  While Janice was upstairs in her bedroom, she heard voices coming from downstairs saying, "he's got a gun."  The intruder in Janice's room then left the room and Janice heard an exchange of gunfire coming from downstairs.  She then saw Albert coming up the stairs holding his firearm, followed by the sound of breaking glass, and then additional gunfire.  Albert was shot during the offense and died from his injuries.

> Jones testified that after the shooting erupted, he, Alexander, and Eubanks all jumped out a bedroom window to escape from the house and then fled on foot, climbing a fence and discarding some clothing and other items along the way. Shortly after the offense, Carpenter and Pagel were involved in a car accident at an intersection approximately half a mile from the crime scene when their car, which was being driven without headlights, collided with another vehicle.  When the

---

[2] The parties agree with this description.  But we note certain anomalies in the Judgment of Sentence that we will describe later in this opinion.

police responded to the accident scene, Carpenter and Pagel were still present and the police discovered that Carpenter had a gunshot wound. A wallet belonging to Austin Papkey, the victim of the earlier home invasion that night, was found in Carpenter's clothing. Nine-millimeter ammunition, with hollow points, was found inside the car. The car was registered to Alexander, whose identification was also found inside the car.

The police recovered video footage capturing Alexander, Eubanks, and Jones at different locations near the crime scene shortly after the offense. The prosecution also presented evidence that on the morning after the offense, Alexander, Eubanks, and Jones made statements to various individuals implicating themselves and others in the offense. Evidence of cell phone mapping technology also placed defendants near the crime scene at the time of the offense. In addition, several items associated with the crime were submitted for DNA testing, and DNA consistent with each defendant's DNA profile was found on different items. In particular, a red shirt found in an alley close to the Ballard home contained DNA consistent with Alexander's DNA profile, and a black hoodie found in some bushes near the Ballard home contained DNA consistent with Eubanks's DNA profile.

The police did not recover any weapons other than Albert's .45-caliber firearm that was found at the scene, but the police recovered both spent and live ammunition from the Ballard home that was consistent with two different weapons—a nine-millimeter firearm and Albert's .45-caliber firearm. Bullet fragments recovered from Albert's body contained hollow points that were consistent with the nine-millimeter ammunition found in the car that Carpenter and Pagel were driving at the time of their accident. The police found a receipt inside the car that indicated that the ammunition was purchased from a Dunham's store on July 1, 2017. The police obtained video footage from the Dunham's store that showed Carpenter and Alexander purchasing the ammunition.

All four defendants were charged with first-degree felony murder, first-degree home invasion, conspiracy to commit first-degree home invasion, armed robbery, assault with intent to rob while armed, and several counts of felony-firearm. The jury found Alexander guilty of all counts as charged. The jury acquitted Carpenter of felony-murder and assault with intent to rob while armed, as well as the felony-firearm counts associated with those offenses, but found him guilty of first-degree home invasion, conspiracy to commit first-degree home invasion, armed robbery, and the felony-firearm charges associated with those three counts. The jury found defendants Eubanks and Pagel guilty of first-degree home invasion and conspiracy to commit first-degree home invasion, and also found Pagel guilty of armed robbery, but acquitted those defendants of all other charges, including all counts of felony-firearm.

In his initial appeal by right, defendant argued that in determining his sentences the trial court erred by relying on conduct of which he was acquitted, contrary to our Michigan Supreme Court's decision in *People v Beck*, 504 Mich 605, 609; 939 NW2d 213 (2019). This Court found

that in justifying its sentencing of defendant, the trial court had made questionable comments that required remand for resentencing; we stated in pertinent part:

> In justifying its sentencing decision with respect to defendant, the trial court made substantially similar comments to those quoted and discussed above [with respect to Eubanks and Carpenter], referring to the impact of "these crimes." The trial court also stated that Janice "had to watch her husband die in front of her." Additionally, after emphasizing that Janice had sold the home, the trial court stated to defendant that Janice and Albert had planned on "growing old there together and you took that from them."
>
> Thus, for the same reasons expressed above with respect to Eubanks and Carpenter, and considering that Pagel is substantially similar to Eubanks and Carpenter in that he was convicted of some crimes and acquitted of others – particularly the felony murder charge – we grant Pagel the same relief and remand for the purposes of allowing the trial court to revisit its guidelines scoring and its ultimate sentencing decision in light of *Beck*. [*Pagel*, unpub op at 35.]

This Court also ordered the trial court to "revisit its decision to impose [multiple] consecutive sentences in light of" *People v Norfleet*, 317 Mich App 649, 666; 849 NW2d 195 (2016) (remanding "so that the trial court can fully articulate its rationale for each consecutive sentence imposed"). *Id*. On remand, the trial court resentenced defendant as described. This appeal followed.

## II. DEFENDANT'S SCORING CHALLENGES

On appeal, defendant raises several challenges to the trial court's scoring of the offense variables (OVs) on remand. We address each in turn.

## A. STANDARD OF REVIEW

In *People v Horton*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 360726); slip op at 2, this Court explained the applicable standards of review with regard to a defendant's challenge to the assessment of points under the sentencing guidelines:

> Under the sentencing guidelines, the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013); *People v Rhodes* (*On Remand*), 305 Mich App 85, 88, 849 N.W.2d 417 (2014). Clear error is established when the appellate court is left with a firm and definite conviction that an error occurred. *People v Fawaz*, 299 Mich App 55, 60, 829 NW2d 259 (2012). This Court reviews de novo "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute . . . ." *Hardy*, 494 Mich at 438; see also *Rhodes*, 305 Mich App at 88. In scoring OVs, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination. *People v Johnson*, 298 Mich App 128, 131, 826 NW2d 170 (2012). "The trial court may rely on reasonable inferences

-4-

arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109, 822 NW2d 271 (2012), overruled in part on other grounds by *People v White*, 501 Mich 160, 164 n 2, 905 NW2d 228 (2017). When a preserved scoring error alters the appropriate guidelines range, resentencing is generally required. *People v Francisco*, 474 Mich 82, 89-92, 711 NW2d 44 (2006). This Court reviews de novo issues involving the interpretation of the sentencing variables. *People v Sours*, 315 Mich App 346, 348, 890 NW2d 401 (2016).

We review unpreserved scoring challenges for plain error affecting substantial rights. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004); *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

### B. OV 1 & OV 3

OV 1 addresses "aggravated use of a weapon." Twenty-five points are to be assessed if "[a] firearm was discharged at or toward a human being[.]" MCL 777.31(1)(a). Fifteen points are to be assessed if "[a] firearm was pointed at or toward a victim[.]" MCL 777.31(1)(c)/ OV 3 addresses "physical injury to a victim," and provides that 100 points are to be assessed under OV 3 if a victim is killed. MCL 777.33(1)(a).

Defendant argues that the trial court erred by assessing 25 points under OV 1 and 100 points under OV 3, because the jury acquitted him of felony murder and all counts of felony-firearm. We agree. The prosecution concedes that the trial court incorrectly assessed 25 points under OV 1, but contends that under this Court's decision in *People v Brown*, 339 Mich App 411; 984 NW2d 486 (2021), the trial court should have assessed 15 points for OV 1. The prosecution concedes that OV 3 should have been assessed at zero points. We agree that OV 3 should have been assessed at zero points and conclude that remand for further proceedings is required with regard to OV 1.

In *Beck*, 504 Mich at 609, our Supreme Court held that "[o]nce acquitted of a given crime, it violates due process to sentence the defendant as if he committed that very same crime." In holding that reliance on acquitted conduct at sentencing a violates a defendant's right to due process, our Supreme Court stated:

When a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard. But when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent. "To allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself." [*Id.* at 626-627, quoting *State v Marley*, 321 NC 415, 425; 364 SE2d 133 (1988).]

Our Supreme Court held that a defendant's due-process protections preclude a sentencing court from finding that a defendant had engaged in conduct of which he was acquitted and sentencing the defendant more harshly as a result. *Beck*, 504 Mich App at 629-630; see also *People v Roberts*, 506 Mich 938; 949 NW2d 455 (2020) (holding that pursuant to *Beck*, the trial court erred by relying on acquitted conduct in scoring offense variable 9 and in imposing an upward out-of-guidelines sentence).

In *Brown*, this Court recognized that post-*Beck*, it is a difficult task for a trial court to determine "the specific facts and circumstances" that it is prohibited from considering as "acquitted conduct" at sentencing. *Brown*, 339 Mich App at 421. This Court noted that the *Beck* Court had defined acquitted conduct as conduct which was "formally charged" but of which, after specific adjudication by the jury, the defendant was found not guilty. *Id.*, quoting *Beck*, 504 Mich at 620. Rejecting a "categorical approach," this Court instead held that a more beneficial way of "identifying the facts and circumstances that are prohibited at sentencing centers on what the parties actually disputed at trial." *Brown*, 339 Mich App at 423. Observing that such an approach is similar to the "rational jury" standard used in the context of double-jeopardy challenges, this Court explained, in pertinent part, how the "rational jury" approach is actually implemented:

> This approach moves away from prohibiting any and all facts and circumstances related to any element of the crime and instead focuses on the key facts and circumstances that the parties argued about during the trial. . . . Rather than focus on all of the conceivable grounds upon which a jury could have theoretically acquitted the defendant—even those grounds, for example, that were conceded by the defense or otherwise uncontested by the parties—the focus would be on the grounds that the parties actually put in dispute at trial. "The inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Id.* at 697 (quotation marks and citation omitted).

This Court in *Brown* determined that its approach would be consistent with *Beck's* directive that the trial court not consider any conduct at sentencing of which the defendant was acquitted. *Brown*, 339 Mich App at 424, citing *Beck*, 504 Mich at 402. Comparing the categorical approach and the rational jury approach, this Court further explained, in pertinent part:

> [U]nder the rational-jury approach, the sentencing court could consider facts and circumstances that were not, in a practical sense, put in dispute at trial, as long as those facts and circumstances were otherwise consistent with the jury's acquittal on a particular charge. *Moreover, if a specific fact or circumstance was relevant to both the acquitted charge and the convicted charge—i.e., if there was an overlap of relevant conduct—then the trial court could consider that fact or circumstance when sentencing on the convicted charge.* [*Brown*, 339 Mich App at 425 (emphasis added).]

In this case, defendant was convicted of both first-degree home invasion and armed robbery. In *People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007), this Court set forth the elements of armed robbery:

(1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon.

The elements of the offense of first-degree home invasion are:

(1) the defendant either breaks and enters a dwelling or enters a dwelling without permission; (2) the defendant either intends when entering to commit a felony, larceny, or assault in the dwelling or at any time while entering, present in, or exiting the dwelling actually commits a felony, larceny, or assault; and (3) while the defendant is entering, present in, or exiting the dwelling, either (a) the defendant is armed with a dangerous weapon, or (b) another person is lawfully present in the dwelling. [*People v Bush*, 315 Mich App 237, 244; 890 NW2d 370 (2016).]

Applying *Beck*, the trial court was prohibited from holding defendant criminally responsible for Arthur Ballard's death "*in any way*, including at sentencing." *Brown*, 339 Mich App at 427. Therefore, as the prosecution concedes, the trial court erred by assessing 25 points for OV 1 and 100 points for OV 3.

With regard to OV 3, the appropriate score for defendant's conduct, in light of his acquittals, is zero. See *Brown*, 339 Mich App at 427 ("In sum, the line to be drawn in this case lies where Johnson brandished his weapon. All of the relevant facts and circumstances leading up to that point can be considered by the trial court when sentencing defendant on the felon-in-possession conviction. Defendant's conduct after that point and Johnson's resulting death fall under *Beck*'s concept of "acquitted conduct" and are off-limits for purposes of sentencing."). With regard to OV 1,[3] we acknowledge that defendant was acquitted of five counts of felony-firearm, which could support the conclusion that OV 1 would have been correctly assessed at zero points.

---

[3] OV 1 provides that "[i]n multiple offender cases, if 1 offender is assessed points for the presence or use of a weapon, all offenders shall be assessed the same number of points." See MCL 777.31(2)(b). OV 1 further provides that "In multiple offender cases, if 1 offender is assessed points for death or physical injury, all offenders shall be assessed the same number of points." See MCL 777.31(2)(a). In this case, the trial court noted at sentencing that some of defendant's co-defendants had been assessed points for OV 1 related to the shooting and death of Arthur Ballard. However, defendant was acquitted of criminal liability for Arthur's death. "Under *Beck*, defendant simply cannot be held criminally responsible for [Arthur's] death in any way, including at sentencing." *Brown*, 339 Mich App at 427. Therefore, notwithstanding the statutory language, and although defendant was one of "multiple offenders" for the armed robbery and home invasion offenses, under *Beck* and *Brown* he cannot be considered, for purposes of scoring OV 1, one of multiple offenders for any offenses arising out of Arthur's shooting and death. *See id.*

However, defendant nonetheless was convicted of first-degree home invasion and armed robbery. As noted, armed robbery specifically includes as an element that the defendant "possessed a dangerous weapon[.]" *Chambers*, 277 Mich App at 7. First-degree home invasion also may require proof that a person is armed with a dangerous weapon, or alternatively, that another person is present in the home. *Bush*, 315 Mich App at 244. Accordingly, we remand this case to the trial court to allow it to reconsider its assessment of points under OV 1 in light of this Court's decision in *Brown*. Specifically, we direct the trial court, as set forth in *Brown*, 339 Mich App at 425, to discern "if a specific fact or circumstance was relevant to both the acquitted charge and the convicted charge—i.e., if there was an overlap of relevant conduct—[such that] the trial court could consider that fact or circumstance when sentencing on the convicted charge."

## C. OV 12 & OV 13

Defendant also argues, in his Standard 4 brief[4] that the trial court erred by assessing 25 points for OV 12 and 25 points for OV 13. We disagree. OV 12 addresses "contemporaneous felonious criminal acts" and 25 points are assessed if "[t]hree or more contemporaneous felonious criminal acts involving crimes against a person were committed." MCL 777.42(a). For a "felonious criminal act" to be considered contemporaneous, it is necessary that "[t]he act occurred within 24 hours of the sentencing offense," and "[t]he act has not and will not result in a separate conviction." MCL 777.42(2)(a)(*i*) and (*ii*). Accordingly, "[w]hen scoring OV 12, a court must look beyond the sentencing offense and consider only those separate acts or behavior that did not establish the sentencing offense." *People v Abbott*, 330 Mich App 648, 655; 950 NW2d 478 (2019) (quotation marks omitted).

OV 13 involves a "continuing pattern of criminal behavior." MCL 777.43(1). Twenty-five points are scored for OV 13 if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(c). MCL 777.43(2)(a) provides that "[f]or determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." In *People v Carll*, 322 Mich App 690, 704-705; 915 NW2d 387 (2018), this Court, interpreting MCL 777.43, held that the phrase "continuing pattern of criminal behavior" means "that there must be more than one felonious event" and that a single felonious act will not amount to a pattern under the statute.

With respect to OV 12, defendant argues that he was only convicted of two crimes against a person at trial. Although defendant is correct, his argument ignores the fact that OV 12's scoring was based on defendant's uncharged criminal conduct against Aaron Papkey. The trial court found that the evidence at trial established that Papkey was the victim of armed robbery, first-degree home invasion, felonious assault, and unlawful imprisonment. Jones's testimony linked defendant to all of these offenses, which are crimes against a person and did not result in separate convictions for defendant. Because three felonious criminal acts occurred within 24 hours of the Ballard home

---

[4] A supplemental appellate brief filed *in propria persona* by a criminal defendant under Supreme Court Administrative Order 2004-6, Standard 4.

invasion and the acts did not result in separate convictions, the trial court did not err by assessing 25 points for OV 12.

The trial court also did not err by assessing 25 points for OV 13. Defendant was convicted of first-degree home invasion, conspiracy to commit first-degree home invasion, and armed robbery. Defendant correctly notes that conspiracy is not a crime against a person. *People v Goodman*, 497 Mich 883; 854 NW2d 720 (2014) ("[c]onspiracy does not constitute a crime against a person or property"); MCL 777.18 (classifying conspiracy as a crime against public safety). Additionally, MCL 777.43(2)(c) provides that conduct used to assess points for OV 12 cannot be used to assess points for OV 13. And under *Beck*, 504 Mich at 626, the trial court could not use conduct of which defendant was acquitted to assess points for OV 13. Nonetheless, as the trial court found that defendant committed four felonious acts against Papkey, and only three were required for the scoring of OV 12, one of the remaining acts against Papkey could be found (along with defendant's convictions of first-degree home invasion and armed robbery) to be "part of a pattern of felonious criminal activity involving 3 or more crimes against a person" under OC 13. See MCL 777.43(c). Defendant has not demonstrated that the trial court clearly erred in its findings regarding defendant's uncharged conduct, and we accordingly find no error in the trial court's assessment of 25 points for OVs 12 and 13.

## D. EFFECT ON SENTENCING GUIDELINES SCORE

Defendant's sentencing offense was first-degree home invasion, which is a Class B crime against a person. MCL 777.16f. Defendant's SIR indicates that he was assessed a total of 190 points for his OVs, which placed him in OV level VI on the sentencing grid. MCL 777.63. Without the points that were assessed for OV 3, defendant's OV score would be 90, which would not, in itself, change defendant's OV level. However, removing the 25 points assessed for OV 1 would reduce defendant's OV level to V. We have found the assessment of 25 points for OV 1 to be erroneous in this case. Therefore, notwithstanding the possibility that the trial court may, on remand, assess sufficient points for OV 1 to return defendant's OV Level to VI, we conclude that because our review of the trial court's scoring decisions has at this point resulted in a change to defendant's appropriate guidelines range, he is entitled to resentencing. *Francisco*, 474 Mich at 92; *People v Kimble*, 470 Mich 305, 312-313; 684 NW2d 669 (2004) (where a scoring error was plain and the defendant received a sentence outside the appropriate guidelines range, the defendant was entitled to be resentenced).[5]

## III. CONSECUTIVE SENTENCES

Defendant also argues that the trial court abused its discretion by imposing consecutive sentences in this case. Because we remand for resentencing, we need not reach this issue. However, for the benefit of the trial court on remand and possible future appellate review, we note that the Judgment of Sentence provided to this Court contains an unmarked checkbox that is to be marked if sentences are to be served consecutively; in fact, the box appears next to a statement that

---

[5] Given our disposition of defendant's scoring challenges, we need not consider his assertions on appeal that the trial court abused its discretion by imposing an out-of-guidelines sentence.

-9-

says, "If this item is not checked, the sentence is concurrent." However, the Judgment of Sentence also contains the typewritten notation, in a section entitled "Court recommendation," that states, "COUNTS 5 & 9 [conspiracy to commit home invasion and armed robbery] ARE CONCURRENT TO EACH OTHER AND CONSECUTIVE TO COUNT 3." Yet, notwithstanding this statement, the Judgment of Sentence provides that all three sentences have the same beginning date of March 14, 2022, with zero days jail credit listed for counts 5 and 9.

At the resentencing hearing, the trial court referred to its authority to "impose a consecutive sentence for home invasion in the first degree." This was presumably a reference to the home invasion statute, MCL 750.110, which specifically provides that the trial court may order a term of imprisonment for first-degree home-invasion "to be served *consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction.*" MCL 750.110a(8). However, the trial court also referred to "consecutive sentence*s*" in the plural, and referred to the armed robbery conviction (but not the conspiracy conviction) as "to be served consecutive to the home invasion."

The record is therefore unclear whether and to what extent the trial court intended to impose consecutive sentences and which sentence(s) it intended to be consecutive to which other sentence(s). Generally, but not always, a sentence that "runs consecutively" to another is the sentence to be served *after* another sentence has concluded. See, e.g., *People v Chambers*, 430 Mich 217, 219 n 1, 220 n 2; 421 NW2d 903 (1988), citing MCR 768.7b and 21 Am Jur 2d, Criminal Law, § 552, p 914; but see MCL 750.227b(3) (stating that a sentence for felon-firearm conviction "shall be served consecutively with and preceding any term of imprisonment imposed for the conviction" of the predicate felony). Therefore, on remand, if the trial court wishes to impose a consecutive sentence or sentences, it should clarify (and the Judgment of Sentence should reflect) which sentence (or sentences) it wishes to designate as consecutive, the source of its statutory authority for doing so, and its reasoning in support of its decision. Moreover, if the trial court wishes to impose multiple consecutive sentences (e.g., for conspiracy to commit home invasion and armed robbery), it should explain its reasoning for each sentence separately, as well as the statutory authority for its decision. *Norfleet*, 317 Mich App at 665.

## IV. REASSIGNMENT ON REMAND

Defendant also argues that the case should be reassigned to another trial judge because, on the earlier remand, the trial court continued to impermissibly consider acquitted conduct and it "merely modif[ied]" its earlier imposition of consecutive sentences. Defendant further asserts that reassignment of the trial court is warranted "to preserve the appearance of justice." We disagree.

In *People v Dixon-Bey*, 340 Mich App 292, 304; 985 NW2d 904 (2022), ("*Dixon-Bey II*") this Court explained, that in determining whether to reassign a case to a different judge on remand, this Court examines three factors:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed [sic] views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of

-10-

proportion to any gain in preserving the appearance of fairness. [Quoting *People v Evans*, 156 Mich App 68, 72; 401 NW2d 312 (quotation marks and citation omitted).]

We conclude that the trial court's resentencing of defendant does not suggest that the trial court could not put out of its mind any of its previously expressed views that this Court determined to be erroneous. *Dixon-Bey II*, 340 Mich App at 304. Moreover, aside from his conclusory allegations, defendant does not point to anything in the record that indicates that reassignment is necessary to preserve the appearance of justice. *Id*. Finally, the record does not indicate that reassignment would entail "waste and duplication out of proportion to any gain in preserving the appearance of fairness." *Id*. Therefore, reassignment on remand for resentencing is not necessary.

## V. CONCLUSION

We vacate defendant's judgment of sentence and remand to the trial court for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra