PEOPLE v FAWAZ

Docket No. 307214. Submitted December 11, 2012, at Detroit. Decided December 20, 2012, at 9:05 a.m.

Mona Hussein Fawaz was convicted by a jury in the Wayne Circuit Court of one count of arson of a dwelling house, one count of arson of insured property, and two counts of making false statements about material matters for an insurance claim. Defendant was sentenced by the court, Thomas E. Jackson, J., to five years' probation plus fines, costs, and $29,408.74 in restitution. The prosecution appealed.

The Court of Appeals *held*:

1. Under offense variable (OV) 3 of the sentencing guidelines, MCL 777.33, a trial court must assess 10 points if bodily injury requiring medical treatment occurred to a victim. The term victim includes any person harmed by the actions of the charged party and it is not limited to only the actual victim of the charged offense. In this case, the trial court erred by assessing zero points for OV 3. Two firefighters constituted victims for purposes of OV 3 because they suffered injuries requiring medical attention while combatting the fire set by defendant. The trial court should have assessed 10 points for OV 3.

2. Under OV 9 of the sentencing guidelines, MCL 777.39, a trial court must assess 10 points if there were 2 to 9 victims who were placed in danger of physical injury or death. A victim is defined in MCL 777.39(2)(a) as each person who was placed in danger of physical injury or loss of life or property. In this case, the trial court erred by assessing zero points for OV 9. Two firefighters suffered physical injuries requiring medical attention and a neighbor from the house next to defendant's was escorted from her house by a police officer for her personal safety. Because all three were victims under the unambiguous language of MCL 777.39(2)(a), the trial court should have assessed 10 points for OV 9.

3. Defendant's sentence was outside the recommended range of the sentencing guidelines. Because OV 3 and OV 9 were scored incorrectly and resentencing was necessary the Court of Appeals declined to address the departure issue.

4. Restitution to crime victims is governed by the Crime Victim's Rights Act, MCL 780.751 *et seq*. A victim is defined in MCL 780.766(1) as an individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime and includes a sole proprietorship, partnership, corporation, association, governmental entity, or any other legal entity that suffers direct physical or financial harm as a result of the crime. Restitution is mandatory, MCL 780.766(2), and the amount of restitution to be paid by a defendant is calculated on the basis of the actual loss suffered by the victim. The prosecution bears the burden of establishing the proper amount of restitution by a preponderance of the evidence. In this case, Farmers Insurance insured the house that defendant was found guilty of burning down. The trial court clearly erred by failing to award Farmers, a corporate victim, restitution for those costs associated with investigating defendant's arson. The resources Farmers spent determining that defendant's claim was fraudulent were part of the actual loss suffered by the victim and should have been included in the restitution amount. However, the trial court did not clearly err when it found that Farmers' legal and court reporter fees should be excluded from the restitution award. The prosecution failed to meet its burden to establish that those fees were incurred in the investigation of the arson because neither the record nor the prosecution's brief reveals when those costs arose.

Sentence reversed in part and case remanded for resentencing.

1. SENTENCES — SENTENCING GUIDELINES — OFFENSE VARIABLE 3 — PHYSICAL INJURY TO VICTIM — DEFINITION OF VICTIM.

Offense variable (OV) 3 of the sentencing guidelines, MCL 777.33, considers physical injury to a victim, and a trial court must assess 10 points if bodily injury requiring medical treatment occurred to a victim; the term "victim" includes any person harmed by the actions of the charged party and it is not limited to only the actual victim of the charged offense; a firefighter who is injured while responding to a fire later determined to be arson is a victim for purposes of OV 3.

2. SENTENCES — SENTENCING GUIDELINES — OFFENSE VARIABLE 9 — DANGER OF PHYSICAL INJURY OR DEATH.

Offense variable (OV) 9 of the sentencing guidelines, MCL 777.39, considers the number of victims; a victim is defined as each person who was placed in danger of physical injury or loss of life or property; a firefighter who was injured while responding to a fire later determined to be arson, and a neighbor living in a house next door who had to be evacuated from his or her house due to the

danger of the fire spreading, constitute victims for purposes of assessing point under OV 9 of the sentencing guidelines.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Valerie M. Steer*, Assistant Prosecuting Attorney, for the people.

*Daniel J. Rust* for defendant.

Before: STEPHENS, P.J., and OWENS and MURRAY, JJ.

PER CURIAM. Defendant was convicted by a jury of one count of arson of a dwelling house, MCL 750.72, one count of arson of insured property, MCL 750.75, and two counts of making false statements about material matters for an insurance claim, MCL 500.4511(1). Defendant was sentenced to five years' probation plus fines, costs, and $29,408.74 in restitution. The prosecution appeals by right the trial court's judgment of sentence. On appeal the prosecution argues that the trial court erred when it concluded that two firefighters and defendant's neighbor were not "victims" for purposes of assessing points for offense variable 3 (OV 3) and offense variable 9 (OV 9). The prosecution also argues that the trial court erred regarding the amount defendant is required to pay in restitution. With respect to the calculation of the sentencing guidelines, we agree with the prosecution and reverse the judgment of sentence. With respect to restitution, we agree with the prosecution that the trial court abused its discretion by failing to include the victim's investigatory costs as part of the restitution amount; however, we conclude that the prosecution has failed to meet its burden to establish that the victim's legal fees should be included in the restitution amount. We remand for resentencing consistent with this opinion.

I. BASIC FACTS

On September 26, 2009, defendant's house caught
fire. By 3:16 p.m., police and firefighters had arrived.
Two of the firefighters, Walter Radu and Rudy Cer-
vantes, who spent over a half-hour combating the blaze,
suffered heat exhaustion requiring medical care from
the advanced life support units at the scene. Radu
received intravenous fluid and was placed on a heart
monitor, and Cervantes received oxygen and intrave-
nous therapy. Defendant's elderly neighbor, Mary Fras,
had to be carried from her home by a police officer after
her home filled with smoke. Fras's house stood approxi-
mately four feet from defendant's house.

The two fire examiners who conducted an investiga-
tion into the cause of the blaze testified at trial that the
fire at defendant's house was set intentionally. In
addition to the examiners, the jury heard testimony
from other police and fire officials; Mary Fras's son;
representatives of Farmers Insurance, the company
which insured defendant's home; and other witnesses
to the fire. The jury convicted defendant.

At sentencing, the prosecution requested that the
trial court assign 10 points for OV 3, which addresses
physical injury to a victim, because Radu and Cervantes
suffered heat exhaustion requiring medical treatment.
With respect to OV 9, which addresses the number of
victims, the prosecution requested that the trial court
assign 10 points for OV 9 because Radu, Cervantes, and
Fras were placed in danger of injury. The trial court
disagreed that Radu, Cervantes, or Fras were "victims"
for purposes of OV 3 and OV 9. The trial court explained
that it agreed that Radu, Cervantes, and Fras suffered
injuries or were in danger of suffering injuries. How-
ever, the trial court disagreed that they were "victims"
for purposes of OV 3 and OV 9 because "they would not

be within that circle of what we would define as a victim" under Michigan law. The trial court implied that Radu and Cervantes could not be "victims" under the sentencing guidelines because, as first responders, they put themselves in danger every time they respond to a fire. With respect to Fras, the trial court explained that every time a house catches fire, neighbors are in danger, and accordingly, Fras was not a victim. Ultimately, the trial court assigned zero points for both OV3 and OV 9.

At sentencing, the trial court also addressed the issue of restitution. Prior to sentencing, Farmers had submitted documentation of the expenses it had incurred following the fire at defendant's home. Specifically, Farmers claimed that it had incurred the following expenses:

Board Up: $978.80

Origin and Cause Investigation: $2,698

Lab Analysis: $745

Exam Under Oath: $7,975.78[1]

Court Reporter: $706.75

Contents Advance: $5,000

Additional Living Expenses: $23,429.99

Investigation Expenses: $928.00

Legal Expenses for Defending Suit Filed by [defendant]: $5,950.20

The presentence investigation report (PSIR) recommended a restitution amount that included all these expenses, for a total recommended restitution amount of $48,411.72. However, at sentencing the trial court concluded that only "Board Up," "Contents Advance," and "Additional Living Expenses" should be included in

---

[1] This item includes the cost of legal counsel used during defendant's deposition.

the restitution amount. The trial court explained that, based on its understanding of the restitution statute, restitution is appropriate only for expenses that were "directly the result of the [defendant's] action." Accordingly, the trial court ordered $29,408.79 in restitution. On appeal, the prosecution only requests $42,462.32. Apparently, Farmers no longer requests the $5,950.20 for "Legal Expenses for Defending Suit Filed by [defendant]."

## II. SENTENCING GUIDELINES

The accuracy of scoring under the sentencing guidelines is a question of law that we review de novo. *People v Cannon*, 481 Mich 152, 156; 749 NW2d 257 (2008). However, we review for clear error a trial court's findings of fact at sentencing. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *People v Buie*, 491 Mich 294, 315-316; 817 NW2d 33 (2012) (citation and quotation marks omitted).

### A. OV 3

The prosecution first argues that the trial court erred by concluding that Radu and Cervantes were not "victims" for purposes of scoring OV 3, and assigning zero points for OV 3. We agree, and remand for resentencing on OV 3.

OV 3 is governed by MCL 777.33, and addresses physical injury to victims. MCL 777.33(1). A trial court must assign 10 points for OV 3 if "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). MCL 777.33 does not expressly define "victim." However, in *People v Laidler*, 491 Mich

339; 817 NW2d 517 (2012), the Supreme Court concluded that "*any* person who is harmed by the defendant's criminal actions" is a "victim" for purposes of OV 3. *Id.* at 348 (emphasis added). The Court reasoned that its construction of the word "victim" was consistent with the dictionary definition of the word, as well as prior caselaw interpreting the word "victim" under OV 3. *Id.* at 348-349. Accordingly, the *Laidler* Court concluded that a coperpetrator killed in a robbery was a "victim" for purposes of OV 3 because he was harmed by the defendant's conduct. *Id.* at 349.

Similarly, in *People v Albers*, 258 Mich App 578, 593; 672 NW2d 336 (2003), this Court concluded that "for purposes of OV 3, the term 'victim' includes any person harmed by the criminal actions of the charged party." In *Albers*, the defendant had argued that "the Legislature's use of the term 'victim' in the singular in MCL 777.33 is indicative of its intent that OV 3 apply only to the victim of the charged offense." *Id.* at 592. This Court disagreed, and reasoned that nothing in the plain text of the statute indicated a legislative intent to limit the definition of "victim" to only the victim of the charged offense. *Id.* at 593. The Court ultimately concluded that "[b]ecause we find no authority indicating otherwise . . . for purposes of OV 3, the term 'victim' includes any person harmed by the criminal actions of the charged party." *Id.*

We find *Laidler* and *Albers* instructive, and conclude that first responders can be "victims" for purposes of OV 3. Had the Legislature intended to limit the term "victim" to exclude first responders, it could have done so. See *People v Hock Shop, Inc*, 261 Mich App 521, 528; 681 NW2d 669 (2004) ("The Legislature is presumed to be familiar with the rules of statutory construction, and when it is promulgating new laws it is presumed to be

aware of the consequences of its use or omission of statutory language."). Nothing in the text of MCL 777.33 indicates a legislative intent to limit the term "victim" to exclude first responders. See *Albers,* 258 Mich App at 593. Moreover, neither *Laidler* nor *Albers* indicated that the term "victim" should be limited to exclude first responders; indeed, the Courts in each of those cases broadly defined "victim" for purposes of OV3 as "any person" harmed by a defendant's actions. *Laidler,* 491 Mich at 348; *Albers,* 258 Mich App at 593.

Radu and Cervantes suffered injuries requiring medical attention while combating the blaze set by defendant. Accordingly, they are "victims" for purposes of OV 3. The trial court should have assigned 10 points for OV 3, but instead assigned zero points. Accordingly, the trial court erred with respect to OV 3.

## B. OV 9

The prosecution next argues that the trial court erred in its determination that there were no victims of the arson for purposes of OV 9, and therefore erred by assigning zero points for OV 9. Again, we agree, and remand for resentencing on OV 9.

OV 9 is governed by MCL 777.39, and addresses the number of victims. A trial court must assign 10 points for OV 9 if, *inter alia,* "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ." MCL 777.39(1)(c). Unlike OV 3, the statute governing OV 9 does expressly define "victim." Specifically, trial courts must count "each person who was placed in danger of physical injury or loss of life or property as a victim" under OV 9. MCL 777.39(2)(a).

"The touchstone of legislative intent is the statute's language. If the statute's language is clear and unambiguous, [courts must] assume that the Legislature

intended its plain meaning and . . . enforce the statute as written. Accordingly, when statutory language is unambiguous, judicial construction is not required or permitted." *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008) (citation and quotation marks omitted). A statutory provision is ambiguous "only if it irreconcilably conflicts with another provision, or when it is equally susceptible to more than a single meaning." *Id.* at 50 n 12 (citation and quotation marks omitted). In the instant action, the statutory language defining "victim" under OV 9 does not conflict with any other statutory provision, and is susceptible to but one interpretation: "each person who was placed in danger of physical injury or loss of life" by defendant's actions is a "victim" for purposes of OV 9. MCL 777.39(2)(a). As with the statute governing OV 3, nothing in the text of the statute governing OV 9 indicates a legislative intent to limit the term "victim" to exclude first responders, see MCL 777.39, and if the Legislature had intended to so limit the definition of "victim" under OV 9, it could have done so. *Hock Shop, Inc*, 261 Mich App at 528.

Cervantes, Radu, and Fras were each "placed in danger of physical injury or loss of life" because of the fire defendant started. MCL 777.39(1)(c). Cervantes and Radu actually suffered physical injuries requiring medical attention, and Fras had to be escorted from her home by a police officer for her personal safety. Accordingly, all three were "victims" under the unambiguous language of OV 9.[2] The trial court should have assigned

---

[2] Moreover, the Supreme Court has already held that civilians who assume a risk of injury when intervening to stop a crime are "victims" for purposes of OV 9. *People v Morson*, 471 Mich 248, 262; 685 NW2d 203 (2004). Defendant makes no argument, and we see no reason, why the same rationale should not apply to first responders who assume a risk of injury when responding to a crime.

10 points for OV 9, but instead assigned zero points. Accordingly, the trial court erred with respect to OV 9.

The prosecution also argues that the trial court erred by departing downward from the sentencing guidelines without a substantial and compelling reason. However, having concluded that resentencing is required with regard to OV 3 and OV 9, we need not address the departure issue.

### III. RESTITUTION

The prosecution next argues that the trial court erred when it excluded some costs requested by the victim, Farmers, from the amount of restitution. We agree in part.

This Court reviews a trial court's restitution order for an abuse of discretion. *In re McEvoy*, 267 Mich App 55, 59; 704 NW2d 78 (2005). The trial court's findings of fact are reviewed for clear error. *People v Zahn*, 234 Mich App 438, 445; 594 NW2d 120 (1999). We review de novo the trial court's interpretation of the Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq. People v Law*, 459 Mich 419, 423; 591 NW2d 20 (1999).

The CVRA governs restitution to crime victims. As a threshold matter, for purposes of restitution, the CVRA defines "victim" as "an individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime." MCL 780.766(1). The definition of "victim" "includes a sole proprietorship, partnership, corporation, association, governmental entity, or any other legal entity that suffers direct physical or financial harm as a result of a crime." *Id.* Accordingly, Farmers is a victim under the CVRA for purposes of restitution. See also *People v Norman*, 183

Mich App 203, 206; 454 NW2d 393 (1989) ("[R]estitution may be ordered to a reimbursing insurance company.").

Under the CVRA, restitution is mandatory, not discretionary:

> [W]hen sentencing a defendant convicted of a crime, the court *shall* order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate. [MCL 780.766(2) (emphasis added).]

"[T]he prosecution bears the burden of establishing the proper amount" of restitution by a preponderance of the evidence. *People v Gahan*, 456 Mich 264, 276; 571 NW2d 503 (1997); MCL 780.767(4). "The amount of restitution to be paid by a defendant must be based on the actual loss suffered by the victim . . . ." *People v Bell*, 276 Mich App 342, 347; 741 NW2d 57 (2007). Moreover, when it enacted the CVRA, "the Legislature plainly intended to shift the burden of losses arising from criminal conduct—as much as practicable—from crime victims to the perpetrators of the crimes; thus, it is remedial in character and should be liberally construed to effectuate its intent." *People v Allen*, 295 Mich App 277, 282; 813 NW2d 806 (2011) (citation and quotation marks omitted).

In *Allen*, this Court addressed the scope of recovery for a corporate victim under the CVRA. The defendant, a sales representative for Blue Cross/Blue Shield (BCBS), had used fraudulent prescriptions and the name of a BCBS subscriber to obtain prescription drugs. *Id.* at 279-280. BCBS spent over $5,000 having another employee from its investigations department, Nina Burnett, spend 44 hours investigating the defen-

dant's actions. *Id.* This Court concluded that BCBS was entitled to the costs it had incurred paying Burnett to investigate the losses that resulted from the defendant's fraud, despite the fact that Burnett's role within the company was to investigate fraud. This Court explained:

> Burnett's department had numerous claims to investigate and she plainly could have spent the 44 hours that she spent investigating [the defendant's] fraud on other matters. Accordingly, Blue Cross essentially lost the time-value of the 44 hours that Burnett had to spend investigating [the defendant's] fraud, rather than some other fraud. That is, the loss to Blue Cross was *not* Burnett's salary or the department's budget; Blue Cross would likely have incurred those costs regardless of Allen's criminal conduct. Rather, it was the loss of time that amounted to a direct financial harm, which can be measured by assigning a value to the hours spent on the investigation. [*Id.* at 282-283.]

Similarly, in *People v Gubachy*, 272 Mich App 706; 728 NW2d 891 (2006), this Court concluded that the value of lost property included the labor cost that the corporate victim incurred determining the amount of the loss. *Id.* at 713.

Accordingly, under the CVRA and its attendant case law, a corporate victim is entitled to costs associated with investigating a defendant's illegal activity. Here, as in *Allen* and *Gubachy*, the victim spent time and labor costs investigating defendant's fire when it could have spent those resources investigating other, nonfraudulent insurance claims. The resources Farmers spent determining that defendant's claim was fraudulent were part of the "actual loss suffered by the victim," and should have been included in the restitution amount. *Bell*, 276 Mich App at 347. We are therefore left with a "definite and firm conviction that an error

occurred" when the trial court found that Farmers' costs for "Origin and Cause Investigation," "Lab Analysis," and "Investigation Expenses," should not be included in the restitution amount. *Buie*, 491 Mich at 315-316 (citation and quotation marks omitted). We reverse this portion of the trial court's restitution order, and direct the trial court to include these costs at resentencing.

However, we conclude that the prosecution has failed to meet its burden to show that Farmers' legal and court reporter fees in connection with defendant's deposition were investigatory under *Allen* and *Gubachy*. Accordingly, the trial court did not clearly err when it found that these costs should be excluded from the restitution award.

The prosecution simply argues that all the costs requested by Farmers are investigatory under *Allen* and *Gubachy*. Neither the record nor the prosecution's brief reveals when these costs arose. It is noteworthy that Farmers originally included in its loss amount submitted to the probation department a separate item for "Legal Expenses for Defending Suit Filed by [defendant]." Farmers no longer requests restitution for these expenses, but continues to request restitution for expenses related to defendant's deposition. These costs appear to be associated with Farmers' defense of a separate civil suit filed by defendant against Farmers, presumably *after* Farmers denied her claim because Farmers had *already* determined it was fraudulent. Even if these costs were not incurred in precisely this way, the prosecution has nonetheless failed to explain why defendant's deposition was part of Farmers' investigation into whether defendant's insurance claim was fraudulent, and therefore properly included as an "actual loss to the victim" under the caselaw. See *Allen*,

295 Mich App at 282-283; *Bell*, 276 Mich App at 347. Therefore, we are not left with a "definite and firm conviction that an error occurred" when the trial court found that Farmers' legal fees should be excluded from the restitution award. *Buie*, 491 Mich at 315-316 (citation and quotation marks omitted).

Remanded for resentencing consistent with this opinion. We do not retain jurisdiction.

STEPHENS, P.J., and OWENS and MURRAY, JJ., concurred.