*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ALEXANDER JAMES HORTON,

      Defendant-Appellant.

FOR PUBLICATION
March 2, 2023
9:05 a.m.

No. 360726
Berrien Circuit Court
LC No. 2020-001422-FH

Before: RIORDAN, P.J., and MARKEY and REDFORD, JJ.

MARKEY, J.

Defendant pleaded guilty to one count of identity theft, second offense, MCL 445.65; MCL 445.69(1)(b). The trial court imposed a sentence of 38 to 120 months' imprisonment for the conviction. Defendant appeals by leave granted[1] the judgment of sentence. We affirm.

While spending time at the home of Sarah Foster, defendant accessed Foster's bank account, took her checkbook, and wrote himself a check for $2,000. He forged Foster's signature on the check and endorsed it. The $2,000 check was deposited by mobile device into defendant's bank account. Bank statements reflected a change in the value of defendant's bank account following the deposit, with defendant's existing balance of negative $571 rising to $1,429. Defendant did not withdraw any monies from his bank account, and days later, after Foster was alerted by her bank of suspicious activity on her debit card, the check was flagged and payment on the instrument was declined. At that point, bank statements regarding defendant's account revealed a return to the negative balance, plus a $10 return deposit fee. The parties agreed below that no funds were actually transferred from Foster's checking account. The presentence investigation report indicated that defendant had also forged Foster's name on a $200 check made payable to defendant, which he actually cashed.

---

[1] *People v Horton*, unpublished order of the Court of Appeals, entered April 28, 2022 (Docket No. 360726).

Defendant's minimum sentence guidelines range was 19 to 38 months' imprisonment. As part of the calculation, Offense Variable (OV) 16 was assessed five points under MCL 777.46(1)(e), which is the appropriate score when a defendant "obtained, damaged, lost, or destroyed" property with "a value of $1,000.00 or more but not more than $20,000.00[.]" MCL 777.46(2)(b) provides that "[i]n cases in which the property was obtained unlawfully, . . . use the value of the property in scoring" OV 16. The five-point score for OV 16 was premised on the deposited $2,000 check. The trial court imposed a minimum sentence at the very top end of the guidelines range, 38 months. Subsequently, defendant moved for resentencing, arguing that he should have been assessed only one point for OV 16 on the basis of the forged and cashed $200 check because it constituted property "obtained" by defendant that had "a value of $200.00 or more but not more than $1,000.00[.]" MCL 777.46(1)(f). But with respect to the $2,000 check, defendant contended that it could not be taken into consideration for purposes of OV 16 because the check, although deposited, was "not necessarily paid or cashed." Defendant emphasized that he never obtained the $2,000. The trial court denied the motion for resentencing, reasoning that "when you get a check and deposit it into [an] account, that's obtaining it." The court later reiterated, "I think when you get a check and deposit it into [an] account, that's obtaining it." Defendant appeals by leave granted.

Under the sentencing guidelines, the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013); *People v Rhodes (On Remand)*, 305 Mich App 85, 88; 849 NW2d 417 (2014). Clear error is established when the appellate court is left with a firm and definite conviction that an error occurred. *People v Fawaz*, 299 Mich App 55, 60; 829 NW2d 259 (2012). This Court reviews de novo "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute . . . ." *Hardy*, 494 Mich at 438; see also *Rhodes*, 305 Mich App at 88. In scoring OVs, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012), overruled in part on other grounds by *People v White*, 501 Mich 160, 164 n 2; 905 NW2d 228 (2017). When a preserved scoring error alters the appropriate guidelines range, resentencing is generally required. *People v Francisco*, 474 Mich 82, 89-92; 711 NW2d 44 (2006).[2] This Court reviews de novo issues involving the interpretation of the sentencing variables. *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016).

The issue in this case is whether defendant "obtained" property with a "value" of $2,000 when he took Foster's checkbook, forged a check made payable to himself for $2,000, and then deposited the $2,000 into his own bank account. In *People v Miller*, 326 Mich App 719, 729; 929 NW2d 821 (2019), this Court adopted the dictionary definition of the verb "obtain" as used in the identity-theft statute, concluding that it means to gain or attain something by planned action or effort.

---

[2] In this case, if OV 16 is assessed one point as urged by defendant, the minimum sentence range of 19-to-38 months decreases to a range of 10-to-23 months. MCL 777.14h; MCL 777.65.

In this case, the prosecution's theory was (1) that the property *obtained* by defendant was the blank check with respect to which defendant fraudulently filled in a payment amount of $2,000 and forged Foster's name, (2) that the *value* of the check was its face value of $2,000, and (3) that, in regard to timing, the property was obtained by defendant when the check was deposited into his bank account as reflected in his bank statements.

"A check is a negotiable instrument entered into between the maker and the payee." *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 72; 711 NW2d 340 (2006). MCL 440.4201(1), which addresses checks, collecting or depository banks, and the provisional status of check-related credits, provides that "[u]nless a contrary intent clearly appears and before the time that a settlement given by a collecting bank for an item is or becomes final, the bank, with respect to the item, is an agent or sub-agent of the owner of the item and any settlement given for the item is provisional." In *Symonds v Mercury Savings & Loan Ass'n*, 225 Cal App 3d 1458, 1464; 275 Cal Rptr 871 (1990), the California court provided the following helpful synopsis:

> When a customer deposits a check drawn on another bank, the customer receives a provisional credit for the amount of the check. The collecting bank, acting as the customer's agent, then forwards the check to the payor bank or a presenting bank which gives the collecting bank a provisional credit. If the check is forwarded to a presenting bank, the presenting bank in turn presents the check to the payor bank from which the check is to be drawn and receives a provisional credit. If the payor bank does not promptly dishonor the check, the provisional settlements throughout this chain of banks become final. [Citations omitted.]

During the period that the collecting bank extends provisional credit to its customer who deposited the check, the check is generally "worth every penny of [its] face value." *In re Cannon*, 237 F3d 716, 721 (CA 6, 2001). Under 12 CFR 229.10(c)(1)(vii), "[a] depositary bank shall make funds deposited in an account by check available for withdrawal not later than the business day after the banking day on which the funds are deposited," but only as to "the [amount] of . . . [t]he lesser of . . . $225, or . . . [t]he aggregate amount deposited on any one banking day to all accounts of the customer by check or checks . . . ."

Initially, we acknowledge that there was no evidence regarding the amount of money that Foster had in her checking account when defendant took her checkbook, and there does not appear to be any dispute that whatever amount of money Foster did have in her checking account, no funds were ever transferred to defendant's bank. But on careful examination of MCL 777.46, OV 16, it becomes clear that defendant did not have to obtain the property valued between $1,000 and $20,000 specifically from Foster; rather, defendant simply needed to have unlawfully obtained property within those value amounts from someone or some entity. When the $2,000 check was deposited in defendant's bank account, he was extended $2,000 in provisional credit, which was reflected in the bank statements showing the $2,000 increase in the balance of defendant's bank account. Although it is not entirely clear to us, it does not appear that had he made a withdrawal attempt, defendant would have been able to access the full $2,000 before the check was flagged and dishonored. Regardless, we conclude that when the $2,000 check was deposited and defendant obtained $2,000 in provisional credit, he effectively "obtained" property with "a value of $1,000.00 or more but not more than $20,000.00[,]" MCL 777.46(1)(e), even though it was fleeting

and temporary. We find it irrelevant for purposes of OV 16 that defendant did not actually cash the check or make a cash withdrawal of the funds.

We affirm.

/s/ Jane E. Markey
/s/ Michael J. Riordan
/s/ James Robert Redford