*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

WILLIAM ANTIONE ALEXANDER,

Defendant-Appellant.

UNPUBLISHED
October 17, 2024
2:20 PM

No. 367041
Wayne Circuit Court
LC No. 19-006710-01-FC

Before: MURRAY, P.J., and BORRELLO and MARIANI, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] his bench-trial convictions of two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) and (2)(b) (sexual contact with a victim under 13 years of age by a defendant 17 years of age or older). Defendant was originally sentenced to 9 to 15 years' imprisonment for each conviction, with the sentences to run consecutively. Defendant's sentence was amended to provide for the sentences to run concurrently.[2] For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Defendant's convictions arise out of his sexual abuse of his biological daughter. The victim testified in detail about three separate instances when defendant rubbed his penis directly on various parts of the victim's genitals when she was approximately between five and seven years old. The victim disclosed the assaults to her mother when she was 13 years old.

Defendant was charged with two counts of first-degree CSC (CSC-I), MCL 750.520b(1)(a) (sexual penetration with a victim under 13 years of age), each including the lesser offense of CSC-

---

[1] *People v Alexander*, unpublished order of the Court of Appeals, entered November 14, 2023 (Docket No. 367041).

[2] Defendant was also sentenced to lifetime electronic monitoring pursuant to MCL 750.520n.

II.  Following a bench trial, the trial court found defendant guilty of two counts of CSC-II and sentenced defendant as previously stated.  Defendant now appeals.

## II.  SCORING ERRORS

Defendant argues that Offense Variable (OV) 13, MCL 777.43, and OV 4, MCL 777.34, were each erroneously assessed 10 points.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence."  *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded by statute on other grounds as stated by *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019) (citations omitted).  "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred."  *People v Fawaz*, 299 Mich App 55, 60; 829 NW2d 259 (2012) (quotation marks and citation omitted).  "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo."  *Hardy*, 494 Mich at 438.  "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR [presentence investigation report], plea admissions, and testimony presented at a preliminary examination."  *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015).

### A.  OV 13

Defendant withdrew his argument regarding OV 13 at oral argument, and for good reason.  Had defendant not waived this argument we would have concluded that the trial court decided to assess 10 points for OV 13 because the victim testified about three separate incidents of sexual assault at trial and the record on review clearly indicates that OV 13 was properly scored.  Hence, even if defendant had not waived this issue we would conclude that defendant is not entitled to relief on this issue.

### B.  OV 4

Next, defendant argues that the trial court incorrectly assessed 10 points for OV 4 because the record evidence did not support a finding that there was any serious psychological injury requiring professional treatment. Because the record evidence was minimal, and every crime victim suffers some degree of psychological harm, OV 4 should have been assessed 0 points.

OV 4 is assessed 10 points when "[s]erious psychological injury requiring professional treatment occurred to a victim[.]"  MCL 777.34(1)(a).  The court is to assess 10 points "if the serious psychological injury may require professional treatment," but "[i]n making this determination, the fact that treatment has not been sought is not conclusive."  MCL 777.34(2).  "[P]oints for OV 4 may not be assessed solely based on a trial court's conclusion that a 'serious psychological injury' would normally occur as a result of the crime perpetrated against the victim and . . . evidence of fear while a crime is being committed, *by itself*, is insufficient to assess points for OV 4."  *People v White*, 501 Mich 160, 162; 905 NW2d 228 (2017).  "Whether the victim has sought treatment does not determine whether the injury may require professional treatment."  *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014).  "The trial court may assess

10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *Id.*

Here, the record evidence supports the trial court's assignment of 10 points for OV 4, and the trial court's factual determinations regarding severe psychological injury requiring professional treatment occurring to the victim contained no clear error. The victim testified that the incidents made her feel disappointed in herself and defendant, bad about herself, and like she was not "good enough." Both the victim and the victim's mother testified that the victim went to a psychiatrist after she told her mother in 2018 about the sexual abuse committed by defendant. According to the victim's mother, the victim had "a lot" of "emotional breakdowns, crying for no apparent reason," and lashed out at her cousins during the period before she told her mother about the incidents, which was "unusual behavior" for the victim. However, the victim's mother testified that the victim's mood changed in a "positive" way after she disclosed the abuse. The trial court indicated that it relied on this evidence in scoring OV 4, and its findings do not constitute a clear error. *Fawaz*, 299 Mich App at 60. Based on these factual findings, the trial court did not err by assessing 10 points for OV 4. *Hardy*, 494 Mich at 438; *Armstrong*, 305 Mich App at 247.

## III. DEPARTURE SENTENCES

Defendant next argues the trial court's upward departure sentences of 9 to 15 years imprisonment for each conviction, which exceeded the guidelines minimum sentence range of 19 to 38 months, were unreasonable and disproportionate. Defendant argues that the trial court improperly sentenced him based on his acquitted conduct for CSC-I, contrary to the principles delineated in *People v Beck*, 504 Mich 605, 629; 939 NW2d 213 (2019). Defendant also argues that the trial court's reliance on the fact that defendant was the victim's biological father was improper because the guidelines in OV 10 already accounted for this factor.

"We review a trial court's upward departure from a defendant's calculated guidelines range for reasonableness." *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017), citing *People v Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 (2015). "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). Our Supreme Court has explained that under the principle of proportionality,

> "a judge helps to fulfill the overall legislative scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing. In making this assessment, the judge, of course, must take into account the nature of the offense and the background of the offender." [*Id.* at 472, quoting *Milbourn*, 435 Mich at 651.]

" '[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range . . . .' " *Steanhouse*, 500 Mich at 475, quoting *Milbourn*, 435 Mich at 661. If a trial court determines that a departure

sentence is more proportionate than a sentence within the guidelines, the court "must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citations omitted).

> [R]elevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight. [*Id*. (citations omitted).]

Although "the legislative sentencing guidelines are advisory *in all applications*," *Steanhouse*, 500 Mich at 459, "due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted," *Beck*, 504 Mich at 629. Thus, "[o]nce acquitted of a given crime, it violates due process to sentence the defendant as if he committed that very same crime." *Id*. at 609. However, "*Beck* expressly permits trial courts to consider uncharged conduct and any other circumstances or context surrounding the defendant or the sentencing offense." *People v Beesley*, 337 Mich App 50, 62; 972 NW2d 294 (2021) (quotation marks and citation omitted). "*Beck* does not preclude all consideration of the entire *res gestae* of an acquitted offense." *Id*. (quotation marks and citation omitted).

Here, defendant was subject to sentencing by the same judge who had presided over defendant's bench trial. The judge chose to enact a sentencing departure beyond the upper limit of the guidelines range by approximately six years. Notably, the judge meticulously articulated the rationale for this upward departure sentence on the record.

The judge referred to his conclusions from the bench trial, stating that there was insufficient evidence to prove penetration for CSC-I. However, the judge found that all elements of CSC-II, including genital-to-genital touching, had been proven beyond a reasonable doubt. Defendant, an adult and the victim's father, was found guilty of rubbing his penis against the victim's vagina for sexual purposes when she was under 13 years old. As a result, the judge found defendant guilty of two counts of the lesser offense of CSC-II. The judge explained these findings at the conclusion of the bench trial:

> Do I believe that what happened probably is exactly as the Prosecution described it? Yes. But, probably isn't enough to satisfy CSC I. I have doubts about whether or not his penis breach [sic] the plane of the labia majora based on the specifics of [the victim's] testimony. I found her to be particularly credible but there simply wasn't enough specifics about the sex act for me to find [defendant] guilty of CSC I on either charge.

It is worth noting that the judge observed the victim testified to three distinct acts, even though defendant was charged with committing two criminal sexual acts.

At sentencing, the judge stated that he had expressly considered the guidelines, that the guidelines were advisory, that the "keystone" for sentencing in Michigan is "proportionality," and

-4-

that the "sentence imposed has to match the conduct in the case and the individual defendant." The judge found that the conduct in this case was "extreme" for CSC-II but recognized that defendant had not been convicted of CSC-I. The judge explained that the "conduct in this case is essentially that [defendant] had on three different occasions effectively had sex with his daughter, rubbing his penis against his daughter's vagina."

The judge acknowledged that a wide range of behaviors could lead to a conviction of CSC-II. The judge believed that defendant's actions in this case were very close to meeting the criteria for CSC-I. The trial court focused on the specific behavior of defendant, considering it to be at the most extreme end of the conduct spectrum that could lead to a conviction of CSC-II. As a result, the trial court reasoned that the sentencing guidelines did not adequately represent the most serious conduct within CSC-II that was proven in this case. Additionally, the court recognized that defendant could not be found guilty of CSC-I due to a lack of proof of penetration. Accordingly, the record does not indicate that acquitted conduct was used to impose upward departure sentences in violation of the requirements in *Beck*. *Beck*, 504 Mich at 609, 629.

Rather, the judge found at sentencing that "the sentencing guidelines in this case are woefully inadequate" and that an upward departure was warranted. Specifically, the judge reasoned that the guidelines "make reference to a position of authority, but they don't take into account that this is a biological father engaging in a sex act with his biological daughter." The judge also reasoned that "although we have now scored the guideline for OV 13 at ten points, the reality is it doesn't take into account the gravity of an additional instance of criminal sexual conduct that is not a count of conviction." Additionally, the judge relied on his finding that the conduct in this case was among the most extreme forms of conduct that constituted CSC-II.

Regarding the trial court's explanation that the guidelines did not adequately consider that defendant was a father engaging in a sex act with his biological daughter, OV 10 accounts for exploitation of a vulnerable victim. MCL 777.40(1). An assessment of 10 points is directed when "[t]he offender exploited a victim's . . . youth or agedness, or a domestic relationship, or the offender abused his or her authority status . . . ." MCL 777.40(1)(b). "Abuse of authority status" means "a victim was exploited out of fear or deference to an authority figure, including, but not limited to, a parent, physician, or teacher." MCL 777.40(3)(d).

Here, the trial court assessed 10 points for OV 10, considering defendant's primary purpose for each of the acts was sexual gratification. OV 10 accounts for the youth of the victim*, or* a domestic relationship *or* the abuse of authority status. Use of the term "or," in general, refers to a choice or alternative; the term is " 'used to connect words, phrases, or clauses representing alternatives.' " *People v Williams*, 288 Mich App 67, 75; 792 NW2d 384 (2010), aff'd 491 Mich 164 (2012), quoting Random House Webster's College Dictionary (1997) (defining "or"). In this instance, the possible alternative components of MCL 777.40(1)(b) were all realized, given the young age of the victim, the parental domestic relationship, and the authority status of defendant. It can be argued that the violation of trust, which should naturally exist in the relationship between a father and his daughter, was not fully considered. Therefore, the trial court was justified in finding that the scoring of OV 10 did not adequately reflect the significance of the circumstances surrounding these offenses.

Furthermore, as noted by the trial judge, the sentencing guidelines did not fully consider the severity of the CSC-II offenses that defendant was convicted of in this case, nor did they fully account for another serious incident of uncharged criminal sexual conduct that defendant committed against the victim. The trial court clarified that the behavior in this case bordered between CSC-I and CSC-II. If defendant had been convicted of CSC-I, he would have faced a mandatory minimum sentence of 25 years in prison because he was over 17 and the victim was under 13. See MCL 750.520b(2)(b); *People v Roy*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359894); slip op at 7 ("We therefore hold, pursuant to MCL 750.520b(2)(b), a person 17 years old or older who is convicted of a CSC-I offense against a victim or victims under the age of 13 who receives a term-of-years sentence must be sentenced to a term of not less than a 25-year minimum sentence."). Defendant's minimum sentence of 9 years was closer to the top end of his guidelines range than the mandatory minimum sentence of 25 years that he would have faced if convicted of CSC-I under these circumstances. This is even though, as stated by the trial court, his conduct was only slightly short of constituting CSC-I.

After reviewing the entire record, we conclude that defendant's sentence was proportionate to the seriousness of the crime and the individual circumstances outlined above. The trial court sufficiently explained its reasons for departing from the sentencing guidelines and why its sentence was more proportionate than the guidelines sentence by citing the extreme seriousness of the criminal acts and factors that were not adequately considered under the guidelines for defendant's CSC-II convictions. *Steanhouse*, 500 Mich at 459-460, 472, 475; *Dixon-Bey*, 321 Mich App at 525. We affirm defendant's sentences in all respects.

Affirmed.

/s/ Christopher M. Murray
/s/ Stephen L. Borrello
/s/ Philip P. Mariani