*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER AARON MAKI,

Defendant-Appellant.

UNPUBLISHED
March 24, 2025
1:31 PM

No. 367287
Iron Circuit Court
LC No. 23-006577-AR

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID ANDREW DOBSON,

Defendant-Appellant.

No. 367493
Iron Circuit Court
LC No. 23-006576-AR

Before: CAMERON, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

Defendants each pleaded no contest to a misdemeanor charge of malicious destruction of grass, turf, or soil in the amount of less than $200 ("turfing"), MCL 750.382(1)(a), for which they were sentenced to five days' community service and ordered to pay $335 in fines and costs. Following a restitution hearing, the district court ordered defendants, jointly and severally, to pay restitution in the amount of $139,378 to the City of Iron River ("the City") for damage done to the property at issue in this case. Defendants unsuccessfully appealed to the circuit court. In these

-1-

consolidated cases,[1] defendants now appeal by leave granted,[2] arguing that both lower courts erred because there was insufficient evidence demonstrating that they caused the damage to the property for which restitution was imposed. We agree. Accordingly, we reverse the circuit court to the extent that it affirmed the district court's restitution findings and award, vacate the district court's order regarding restitution, and remand for a new restitution hearing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 10, 2021, defendants drove their pickup trucks through mud and standing water on a field owned by the City. Underneath the field was a drain and septic system. The City's mayor, who lived near the field and underlying drain and septic system, heard driving on the field and reported the incident to the city manager, who then reported the incident to the police for further investigation. The police subsequently interviewed defendants, both of whom admitted that they had gone "mudding" on the field earlier that day.

Defendants each pleaded no contest to a misdemeanor charge of turfing, less than $200, in August 2021, and they were subsequently sentenced as described. At sentencing, both defendants objected to the restitution amount claimed by the prosecution and requested a restitution hearing. Per a report submitted by the prosecution, the City requested $139,378 in restitution to cover the full replacement cost of the portion of the drain and septic system (namely, one of the two drain fields in the system) that was purportedly damaged during the sentencing offense. The district court set the matter for a joint restitution hearing, which ultimately took place in July 2022.[3]

The evidence adduced at the restitution hearing established that defendants had each driven on the City's field on April 10, 2021. The evidence also established that the City had sustained substantial damage to its field and underlying drain and septic system. The prosecution put forth testimony from the investigating officer and the city manager that they had visited the field on April 10, 2021, shortly after defendants had driven on it, and they had observed significant rutting caused by truck tires on the field, as well as mud, standing water, and the smell of sewage. An engineer who had been hired by the city manager to assess the damage to the drain and septic system and estimate the cost of repair testified that the mud, standing water, and smell of sewage indicated that the system had been damaged. The engineer explained that the rutting on the field "was significant enough" and ran deep enough into the soil that it "compromise[d] the operation

---

[1] These cases were consolidated "[o]n this Court's own motion pursuant to MCR 7.216(A)(7)[.]" *People v Maki*, unpublished order of the Court of Appeals, entered July 23, 2024 (Docket No. 367287).

[2] *People v Maki*, unpublished order of the Court of Appeals, entered July 23, 2024 (Docket No. 367287); *People v Dobson*, unpublished order of the Court of Appeals, entered March 27, 2024 (Docket No. 367493).

[3] Shortly after setting the matter for a restitution hearing but before the restitution hearing occurred, the presiding district court judge issued an order recusing himself from the case because the City was seeking over $100,000 in restitution and his uncle was the City's mayor and "chief witness." The matter was subsequently reassigned to a new district court judge, who thereafter presided over the joint restitution hearing. The Mayor ultimately did not testify at the restitution hearing.

of" a portion of the underlying drain and septic system, which in turn prevented the entire system from operating as intended. The engineer further explained that replacement of the damaged portion of the system was necessary to bring the entire system back into proper working order. The city manager testified that because the damaged portion of the system was not repairable, the City was seeking restitution in the amount of $139,378 for all costs associated with its replacement, as recommended and quoted by the engineer.

The investigating officer and the city manager testified that they believed that, based on their observations of the damage to the field on April 10, 2021, and defendants' admissions to the officer that they had gone "mudding" on the field hours earlier, defendants had caused the damage to the field and underlying drain and septic system. Defendants, meanwhile, offered testimony and evidence that they did not cause that damage. Defendants, as well as a friend of theirs who was present during the incident, testified that, when they arrived at the field on April 10, 2021, the field was already in a state of disrepair, with deeps ruts, mud, standing water, and a sewage smell. Defendants' friend further testified that he had driven by the field on his four-wheeler on April 9, 2021, the day prior, and the field was already covered in ruts, mud, and standing water at that time. The friend also provided as evidence several short videos that he had taken on April 9, 2021, of other individuals repeatedly driving through mud on the field, spinning their tires in the mud, and making deep ruts on the field. Defendants and their friend testified that they only visited the field on April 10, 2021, based on the videos of the other individuals that their friend had taken the day before, and that they drove on the field only for a short time and only where there was already mud and rutting from other tire tracks.

On September 28, 2022, the district court issued a written opinion and order awarding restitution in the amount of $139,378 to the City—the full amount requested by the City to replace the damaged portion of its drain and septic system—finding that the prosecution had proven by a preponderance of the evidence that defendants were responsible for that damage. The court acknowledged defendants' argument "that there were other 'mudders' in the area the day before" who caused the damage and found that "[c]learly," the other individuals had "caused extensive damage to the drain field," but it nonetheless concluded that defendants were jointly and severally "responsible for the total amount of restitution claimed." Defendants subsequently filed a joint motion for reconsideration, which the district court denied on November 10, 2022. Defendants thereafter each filed an application for leave to appeal in the circuit court, which the circuit court denied on July 24, 2023. These appeals followed.

## II. STANDARD OF REVIEW

This Court reviews de novo the trial court's interpretation and application of "statutes authorizing the assessment of restitution at sentencing." *People v McKinley*, 496 Mich 410, 414-415; 852 NW2d 770 (2014). "This Court reviews for an abuse of discretion the trial court's calculation of a restitution amount, while reviewing the trial court's factual findings for clear error." *People v Bentley*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364303); slip op at 3. "A finding is clearly erroneous if, after reviewing the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Barritt*, 325 Mich App 556, 561; 926 NW2d 811 (2018) (quotation marks and citation omitted). "A trial court abuses its discretion when it chooses an outcome outside of the range of principled outcomes or when it makes an error of law[.]" *Bentley*, ___ Mich App at ___; slip op at 3 (citations omitted).

III. DISCUSSION

Defendants argue on appeal that the district court clearly erred by finding that they caused the damage for which restitution was awarded, and it therefore abused its discretion by ordering defendants to jointly and severally pay restitution in the amount of $139,378 for that damage. Specifically, defendants argue that they can only be ordered to pay restitution for losses that are factually and proximately caused by the sentencing offense, and the prosecution presented insufficient evidence demonstrating that they caused the claimed damage to the drain and septic system. As a result, defendants contend, the circuit court erred by affirming the district court's restitution findings and award. We agree.[4]

"Crime victims have a constitutional and statutory right to restitution." *Id*. at ___; slip op at 4. See also Const 1963, art 1, § 24; MCL 769.1a (the general restitution statute); MCL 780.766 (part of the Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq.*). Indeed, an order of restitution is mandatory rather than discretionary. *People v Corbin*, 312 Mich App 352, 360; 880 NW2d 2 (2015); see also MCL 769.1a(2).[5] "The amount of restitution to be paid by a defendant must be based on the actual loss suffered by the victim," and "the prosecution bears the burden of establishing [this amount] by a preponderance of the evidence." *People v Fawaz*, 299 Mich App 55, 65; 829 NW2d 259 (2012) (quotation marks, citations, and alterations omitted). The amount of restitution awarded must be based on the evidence. *People v Wahmhoff*, 319 Mich App 264, 270; 900 NW2d 364 (2017). "[S]peculative or conjectural" evidence will not satisfy the standard. *Corbin*, 312 Mich App at 365, 370.

The general restitution statute requires an order of restitution if, in relevant part, a "misdemeanor . . . results in damage to or loss or destruction of property of a victim of the . . .

---

[4] Defendants also argue on appeal that the district court—and, by extension, the circuit court—erred by failing to ascertain or otherwise adequately address the fair market value of the property when determining the restitution amount, as it was statutorily required to do. Given our disposition of this appeal, we need not reach that challenge. As explained below, however, we note that both lower courts erroneously relied on provisions of the Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq.*, rather than Michigan's general restitution statute, MCL 769.1a, when making their restitution determination.

[5] Given that defendants' sentencing offense was neither a felony nor a serious misdemeanor, the general restitution statute rather than the CVRA governed the district court's restitution determination in this case. See *People v Castillo*, 337 Mich App 298, 309-314; 975 NW2d 94 (2021) (discussing the different avenues for obtaining restitution for a misdemeanor offense). See also MCL 780.811(1)(a). The district court erroneously cited to MCL 780.766 of the CVRA, which applies to felony offenses, and to MCL 780.826 of the CVRA, which applies to "serious misdemeanors." As explained in *Castillo*, 337 Mich App at 309-314, however, restitution was nonetheless available under the general restitution statute, MCL 769.1a, and the relevant provisions of the two restitution statutes contain nearly identical language, see *People v Foster*, 319 Mich App 365, 379; 901 NW2d 127 (2017). Thus, although the court erred by relying on the CVRA when making its restitution determination, that error in itself did not seemingly affect the analysis or outcome.

misdemeanor[.]" MCL 769.1a(3). Although the statute requires that this award of restitution be "full," i.e., "maximal and complete," *Bentley*, ___ Mich App at ___; slip op at 5 (quotation marks and citation omitted), it also "requires a direct, causal relationship between the conduct underlying the convicted offense and the amount of restitution to be awarded[,]" *McKinley*, 469 Mich at 421; *People v Foster*, 319 Mich App 365, 379; 901 NW2d 127 (2017) (holding that "the rule set forth in *McKinley* for MCL 780.766(2)" extended to MCL 769.1a(2) because "MCL 769.1a(2) contains language identical to MCL 780.766(2) and . . . could be considered the precedential equal of MCL 780.766(2)"). In other words, a victim may recover "only for losses factually and proximately caused by the defendant's offense[.]" *Corbin*, 312 Mich App at 369. Restitution may therefore "encompass only those losses that are easily ascertained and are a direct result of a defendant's criminal conduct." *Id*. at 362 (quotation marks and citations omitted). Furthermore, "restitution is not a substitute for civil damages," and "[a] trial court may abuse its discretion by blurring the distinction between a civil remedy for damages and the criminal penalty of restitution." *Id*. at 360-361.

The district court in this case clearly erred by finding that the prosecution had adequately shown that the damage to the drain and septic system directly resulted from defendants' criminal conduct. See *id*. at 362. To prove that defendants caused this damage, the prosecution primarily relied on the testimony of the investigating officer and the city manager. Both of these witnesses testified that they believed that defendants had caused the claimed damage because defendants had admitted to driving on the field on April 10, 2021, and they had observed mud, ruts, standing water, and a smell of sewage when they visited the field shortly after defendants had driven on it. The city manager further testified that the drain and septic system was, as far as she was aware, functioning properly before the date on which defendants drove on the field.

The city manager, however, also testified that she had not personally visited the field at any point prior to April 10, 2021, and maintenance employees had not visited the field since "prior to the snow falling" several months prior to the incident. Nor did the city manager offer testimony indicating that she would have otherwise been aware of the damage to the drain and septic system had it occurred at some point before April 10, 2021; to the contrary, she testified that she had not received any complaints about the functioning of the drain and septic system even after the damage was discovered. The city manager further admitted that she could not specifically "determine whose . . . vehicle did the damage" to the property, whether either defendant caused all of the damage to the field, or to what extent either defendant damaged the field. Indeed, she testified that, if others had been driving on the field and creating its muddied condition before April 10, 2021, she would have no way of determining what damage may have been caused by defendants. Similarly, the officer testified that he had never visited the field prior to April 10, 2021, and was unaware if any other individuals had gone "mudding" on the field prior to defendants doing so. The officer also could not say whether the various tire tracks found on the field matched the tires on defendants' trucks.

It is thus clear from the entirety of their testimony that the officer and the city manager simply assumed that because they had observed the damage to the field on April 10, 2021, and because defendants admitted to driving on the field earlier that day, defendants must have caused the damage. Their testimony indicated that neither of them was familiar with the condition of the field prior to April 10, 2021, and that neither of them observed defendants driving on the field or was in a position to say whether or to what extent the field or underlying drain and septic system

-5-

was damaged—or who had driven on the field—prior to defendants driving on it. Ultimately, the two witnesses could do little more than speculate that defendants directly caused the damage to the drain and septic system for which restitution was sought. See *id*. at 362, 365, 370.

Moreover, defendants put forth affirmative, uncontradicted evidence that directly undermined the prosecution's assertion that defendants themselves caused the claimed damage. Defendants and their friend testified that, at the time that defendants drove on the field, it was already very muddy, had severe rutting and pools of standing water, and smelled strongly of sewage. Defendant Maki circled around the field once, defendant Dobson circled around the field twice, and both defendants only drove in already-established mud and ruts on the field. Defendants' friend testified that the field was already covered in ruts, mud, and standing water when he drove near the property on his four-wheeler on April 9, 2021, the day prior. According to defendants' friend, the individuals mudding on the field that day had driven around the field at least 10 times during the 10 to 15 minutes that he had observed them, and they were still driving around in the "mud pit" by the time that he left. Defendants' friend had taken videos of these individuals driving on the field, which were presented to the court as evidence and which depicted the individuals spinning their tires, making deep ruts, and repeatedly driving through a "mud pit" on the field on April 9, 2021. Defendants and their friend explained that they only decided to drive on the field on April 10, 2021, based on what they had seen in those videos. Defendants also explained that they did not drive as extensively or aggressively as the individuals in the videos. Such evidence strongly suggested that the damage to the field and underlying drain and septic system was directly caused by other individuals before defendants decided to drive on it. And there was no evidence presented that contradicted this evidence, or that indicated that defendants had damaged parts of the field previously untouched by the other individuals or had particularly exacerbated the already-existing damage caused by those individuals.

Accordingly, based on the evidence presented to the district court, the prosecution failed to demonstrate the necessary causal connection between defendants' criminal conduct and the damage to the drain and septic system. See *McKinley*, 469 Mich at 421; *Foster*, 319 Mich App at 378-379. The district court, for its part, seemingly recognized the deficiencies in the proofs of causation when rendering its decision. For instance, although the court initially expressed doubt during the restitution hearing about the videos taken by defendants' friend, it is clear from the court's subsequent opinion and order that it credited both the testimony of defendants' friend and the videos that he had taken of the other individuals. Indeed, the court expressly stated in its order that, "[c]learly," the other individuals had "caused extensive damage to the drain field" prior to defendants driving on it. The court, however, failed to explain how—given this fact and the other evidence presented at the restitution hearing—it could nonetheless conclude that defendants had been shown to have directly caused the claimed damage to the drain and septic system. To the contrary, the district court appeared to have simply accepted the assumption that, because defendants drove on the field, and because the underlying drain and septic system was subsequently found to be damaged, defendants must have caused the damage. Such speculation or conjecture, however, was insufficient to establish that defendants' conduct underlying their sentencing offense was the factual and proximate cause of the damage to the drain and septic system. See *Corbin*, 312 Mich App at 365, 370.

## IV. CONCLUSION

In sum, while there was substantial proof that the City sustained the damage to its drain and septic system for which the prosecution sought restitution, there was insufficient evidence that this claimed damage directly resulted from defendants' criminal conduct. See *id*. at 362, 369. The district court clearly erred by finding that defendants' conduct caused the damage at issue in this case, and it abused its discretion by ordering defendants to jointly and severally pay $139,378 in restitution for that damage. See *Bentley*, ___ Mich App at ___; slip op at 3. The circuit court, in turn, necessarily erred by affirming the district court's restitution findings and award. See *id*. We therefore reverse the circuit court to the extent that it affirmed the district court's restitution findings and award, vacate the district court's order of restitution, and remand for a new restitution hearing to determine the proper amount of restitution, if any, owed by defendants.[6] We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani

---

[6] Defendants also argue on appeal that they should be permitted to withdraw their no-contest pleas because the judge who presided over the plea-taking process and sentencing was related to the City's mayor. Defendants, however, do not meaningfully develop this argument; they simply assert that the judge should have recused himself from the matter prior to the plea and sentencing hearings as opposed to before the restitution hearing. Given defendants' failure to adequately develop this issue, we decline to address it. See *People v Henry*, 315 Mich App 130, 148; 889 NW2d 1 (2016) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.") (quotation marks and citation omitted). We note, however, that based on the record and limited argument before us on this issue, we do not see merit in defendants' position.