*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

LEMONTE RICHAWN JACKSON,

      Defendant-Appellant.

UNPUBLISHED
March 06, 2025
2:32 PM

No. 369346
Wayne Circuit Court
LC No. 23-001138-01-FC

Before: MURRAY, P.J., and K. F. KELLY and D. H. SAWYER*, JJ.

PER CURIAM.

Defendant was convicted after a jury trial of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 45 to 70 years' imprisonment for the second-degree murder conviction and to a consecutive sentence of two years' imprisonment for the felony-firearm conviction. Defendant appeals as of right, and we affirm.

## I. FACTS

On December 22, 2022, defendant shot and killed Patrick Lee Jones at the home of Johnetta Glover, defendant's sister. Glover was Jones' girlfriend, and Jones lived in the house with Glover. Defendant also lived in the house. On the day of the shooting, defendant and his girlfriend were at the house, as were Glover and Jones, and five children, including Jones' teenage sister, MB.

On that day, MB was sleeping in an upstairs bedroom with three of the younger children. Jones was in bed in the other upstairs bedroom; one of the children was in the same bedroom as Jones. MB awoke when she heard Glover and defendant arguing loudly downstairs. Glover and defendant continued their argument upstairs in the hallway and into the bedroom occupied by Jones. MB testified that defendant struck Glover in the face and stated that he was going to shoot

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by Assignment.

-1-

Jones if Jones did not leave by the time defendant came back upstairs. Defendant and Glover then went downstairs, where defendant told Glover to "shut up" or else he would shoot her.

MB testified that Jones asked her to bring him his phone, so she took the phone to Jones in the bedroom. She then went downstairs, where she saw defendant push Glover down. MB returned upstairs and began to get the children dressed. According to MB, defendant came back upstairs holding a handgun, told Jones to leave, then fired one shot into the bedroom occupied by Jones. After defendant fired the shot, he walked past MB, who was sitting on the stairs screaming and crying, and told her to "shut up" or else he would shoot her. Defendant then left the house.

By contrast, defendant testified that on that day he went upstairs because he heard Glover and Jones having a physical fight. Defendant testified that when he confronted Jones for assaulting Glover, Jones called him a b**** and grabbed a gun. Fearing that Jones would shoot him, defendant shot once toward Jones, then ran downstairs and told others to call the police. Glover testified, however, that on the day of the shooting she was arguing with defendant, not with Jones. She testified that after her argument with defendant ended, she left the house and walked down the street. When she heard a gunshot, Glover returned to the house and went inside and saw that Jones had been shot. Police arrived, and Jones was transported to the hospital, where he died from the gunshot wound.

Defendant was arrested and bound over on charges of first-degree murder and felony-firearm. After a jury trial, defendant was convicted of the lesser offense of second-degree murder, as well as felony-firearm. Defendant now appeals, challenging the murder conviction and his sentence.

## II. ANALYSIS

### A. RIGHT OF CONFRONTATION

Defendant contends that the trial court erred by admitting into evidence at trial statements made by Glover to a police officer on the day of the shooting, which defendant argues violated his constitutional right of confrontation. We disagree.

We review de novo whether a defendant's Sixth Amendment right of confrontation was violated. *People v Washington*, ___ Mich ___; ___ NW3d ___ (2024) (Docket No. 165296); slip op at 5. We review a trial court's decision to admit or exclude evidence for an abuse of discretion, which occurs when the trial court's decision falls "outside the range of principled outcomes." *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019). Ordinarily, a trial court's decision on a close evidentiary question is not an abuse of discretion. *Id*. at 252.

Both the United States and the Michigan Constitutions guarantee a criminal defendant's right to be confronted with the witnesses against him or her. US Const, Am VI; Const 1963, art 1 § 20; *Washington*, ___ Mich at ___; slip op at 5. Specifically, "the right of confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witness." *Id*. (quotation marks and citation omitted). However, the right is implicated only for testimonial evidence. *People v Bruner*, 501 Mich 220, 227; 912 NW2d 514 (2018). "Testimony is a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id*. (quotation marks and citations omitted). A statement is

not testimonial if it is made "in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006).

In this case, police arrived at Glover's house shortly after the shooting. While searching for suspects, the officers encountered Glover, who stated to police "I walked down the street. When I got about three or four houses down, I heard a gunshot. After I heard that gunshot, I went back to the house." Glover's statements were recorded by the bodycam video of one of the officers. At trial, it was uncertain whether Glover would appear to testify. Over defendant's objection, the trial court admitted into evidence the portion of the video that included Glover's statements. The trial court reasoned that the statements were not testimonial because the officers had questioned Glover to enable them to meet the ongoing emergency in the aftermath of the shooting. After the statements were admitted into evidence, the prosecution and defendant stipulated that Glover made the statements in question to police, and the prosecution rested its case. Shortly thereafter, Glover appeared to testify. The trial court permitted the prosecution to reopen its proofs, and Glover testified and was cross-examined by defense counsel.

Defendant's challenge that the admission of the evidence violated his right of confrontation is without merit. Waiver is the intentional relinquishment or abandonment of a known right; when a defendant waives a right at trial, he or she may not then seek appellate review of a claimed deprivation of those rights because the waiver has extinguished any error. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). In this case, defendant stipulated that Glover made the statements recorded on the officer's bodycam video. Defendant thereby waived any claim of error resulting from the admission of the statements on that basis.

Moreover, defendant's contention that the admission of the statements violated his right to confrontation is without merit because Glover thereafter testified at trial consistently with her recorded statements, and defendant had an opportunity to, and in fact did, cross-examine Glover. Because defendant had the opportunity to question Glover regarding the same information that Glover stated to the officer on the day of the shooting, defendant was not denied his right of confrontation.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that defense counsel provided ineffective assistance at trial because she failed to request a jury instruction on the lesser offense of voluntary manslaughter, which defendant argues thereby denied him a fair trial. We disagree.

A defendant's claim that counsel was ineffective is a mixed question of fact and constitutional law. *People v Posey*, 512 Mich 317, 332; 1 NW3d 101 (2023). We review for clear error the trial court's findings of fact and review de novo questions of law. *Id*. Because no evidentiary hearing in this case was held under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), our review of defendant's claim of ineffective assistance of counsel is limited to "mistakes apparent on the record." *People v Smith*, 336 Mich App 79, 100; 969 NW2d 548 (2021).

Both the United States and Michigan Constitutions, US Const Am VI; Const 1963, art 1, § 20, guarantee a defendant the effective assistance of counsel. *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016). To warrant a new trial on the basis of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness, overcoming the strong presumption that counsel's assistance constituted sound trial strategy. *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). The defendant also must show that, but for counsel's deficient performance, a different result would have been reasonably probable, *id*., meaning a probability sufficient to undermine confidence in the outcome of the proceedings. *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023).

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Thorne*, 322 Mich App 340, 347; 912 NW2d 560 (2017) (quotation marks and citations omitted). When assessing whether trial counsel was ineffective because she did not request an instruction for voluntary manslaughter, we consider whether that decision was objectively unreasonable under the circumstance of this case. See *Yeager*, 511 Mich at 490. The decision not to request a particular jury instruction can be a matter of trial strategy, *Thorne*, 322 Mich App 347, but a jury instruction on a necessarily included lesser offense is warranted if "the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *Yeager*, 511 Mich at 490.

Under MCL 768.32(1), "the jury . . . may find the accused not guilty of the offense in the degree charged in the indictment and may find the accused person guilty of a degree of that offense inferior to that charged in the indictment[.]" Voluntary manslaughter is a lesser included offense of murder; when a defendant is charged with murder, the trial court must give an instruction on voluntary manslaughter if the instruction is supported by a rational view of the evidence. *People v Mitchell*, 301 Mich App 282, 286; 835 NW2d 615 (2013).

> Both murder and voluntary manslaughter require a death, caused by defendant, with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result. The distinguishing element is malice, which in voluntary manslaughter is negated by the presence of provocation and heat of passion. [*Yeager*, 511 Mich at 489-490 (quotation marks and citations omitted).]

To establish voluntary manslaughter, the prosecution must prove that the defendant killed in the heat of passion, which a defendant will assert was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions. *People v Pennington*, 323 Mich App 452, 464-465; 917 NW2d 720 (2018). "The provocation necessary to mitigate a homicide from murder to manslaughter is that which causes the defendant to act out of passion rather than reason," and must be adequate to cause a reasonable person to lose control. *People v Pouncey*, 437 Mich 382, 389; 471 NW2d 346 (1991).

Voluntary manslaughter thus requires the defendant to demonstrate that he acted in a heat of passion, whereas the theory of self-defense requires the defendant to show he "honestly and reasonably believe[d] that the use of deadly force [was] necessary to prevent the imminent death of or imminent great bodily harm to himself[.]" MCL 780.972(1)(a). In this case, defense

-4-

counsel's theory at trial was that defendant acted in self-defense. Defendant testified that he confronted Jones about being abusive to Glover, and in response Jones called defendant a name and grabbed a gun; defendant testified that he shot Jones because he feared Jones would shoot him. In other words, defendant's theory at trial was that he made a deliberate choice to shoot Jones to prevent his own death or great bodily harm. Defense counsel's choice not to request a voluntary manslaughter instruction therefore was strategic because a voluntary manslaughter defense would have required defendant to present evidence that he acted in the heat of passion rather than out of self-preservation.

Moreover, the facts in this case do not reasonably support the conclusion that defendant's act was the product of adequate provocation. Defendant's testimony indicated that he and Jones typically had a friendly relationship. Defendant testified that on the day of the shooting, defendant confronted Jones about assaulting Glover, and Jones called defendant a "b****'" and grabbed a gun, prompting defendant to shoot at the victim out of fear of being shot. Defendant did not testify that he acted out of passion; he testified that he was defending himself against Jones. Further, there is no evidence that under the circumstances, Jones calling defendant a name rose to the level of adequate provocation to support a finding of voluntary manslaughter. As a result, defense counsel's choice not to request an instruction on voluntary manslaughter was not objectively unreasonable.

## C. OFFENSE VARIABLE 9

Defendant contends that his sentencing guidelines were incorrectly scored because the trial court improperly assessed 10 points for Offense Variable (OV) 9, resulting in his sentence being based on inaccurate information. We disagree.

A defendant is entitled to be sentenced based upon accurate information and accurately scored sentencing guidelines. *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). When calculating sentencing guidelines, the trial court may consider all record evidence, and rely on reasonable inferences arising from the record. *People v Dingee*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 365531); slip op at 10. We review for clear error the trial court's factual findings, which must be supported by a preponderance of the evidence. *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017). We review de novo whether the trial court's factual findings support the score assessed. *Id*.

 OV 9 addresses the number of victims. MCL 777.39; *People v Fawaz*, 299 Mich App 55, 62; 829 NW2d 259 (2012). An assessment of 10 points for OV 9 is warranted when "[t]here were 2 to 9 victims who were placed in danger of physical injury or death." MCL 777.39(1)(c). A person may be a victim within the meaning of OV 9 if the person was in close proximity to a physically threatening situation, even if the person did not suffer actual harm. *People v Teike*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 363705); slip op at 3.

In this case, the record established that defendant put at least two individuals in danger of death or physical injury during the offense. Defendant shot Jones, and Jones died shortly thereafter. Immediately after shooting Jones and while still holding the gun, defendant walked past MB, Jones' teenage sister, who was hysterical, and told her that he would shoot her, too, if she was not quiet. Although MB did not suffer actual harm, defendant caused her to be in "close

proximity to a physically threatening situation," and MB thereby qualified as a victim under OV 9. See *id*. The trial court properly assessed 10 points for OV 9.

Affirmed.

/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ David H. Sawyer